### LEANDER MOODY *vs.* ANSEL WRIGHT.

A sold certain personal property to B., as stock for a tannery, and took a note therefor, payable in four months, with interest annually; and B., to secure the note, made to A. a mortgage, which was duly recorded, of the same and other property, and also of whatever stock, of every description, that might thereafter belong to B., wherever situated, and whether manufactured or not, or whether at market or not, or the proceeds of the same, if sold, and all leather that might thereafter be manufactured from the proceeds of property then on hand, and in whatever shape it might thereafter exist, so that the then existing and the future property and earnings of B.'s tan works might stand conveyed, pledged, and hypothecated to A. *Held*, that A. had no legal or equitable lien on any property which was not in existence at the time of the mortgage, but which afterwards came into B.'s hands, unless he had done some act by which he obtained possession of that property; and that, as he had done no such act, and as A.'s property, acquired subsequently to the mortgage, had been assigned under *St.* 1838, *c.* 163, B. could not, under § 3 of that statute, require that such property should be sold, and the proceeds applied towards the payment of A.'s note to him.

THIS was a petition, under *St.* 1838, *c.* 163, § 18, for the interposition of the court, as a court of chancery, in behalf of a creditor of two insolvent partners. The petitioner alleged that Horace Wright and Benjamin B. Hoxse, tanners, and partners in business, applied to the judge of probate for the county of Hampshire, in December 1846, for the benefit of the insolvent laws, and that such proceedings were had, upon, their application, that all their estate was assigned to the defendant, as assignee: That the petitioner, in July 1839, sold and delivered to said Wright & Hoxse hides, skins and bark, for the sum of $2374.34, on credit, and took their promissory note therefor, payable in four months, with annual interest, and also took a mortgage of said property, and of other property, which mortgage was duly recorded, and by which they secured to the plaintiff whatever hides, skins, bark or stock, which might afterwards belong to them, wherever situated, and whether manufactured or not, and whether at market or not, or the proceeds of the same, if sold, and also all leather thereafter manufactured from the proceeds of the property then on hand, and in whatever shape it might afterwards exist, or whatever form it might assume, so that the then present and future earnings of the said Wright

2 *

& Hoxse's tan works, both stock and proceeds, and whether sold or unsold, might stand conveyed, pledged and hypothecated to the petitioner, for the payment of said purchase money and note :   That said note and mortgage had never been satisfied, discharged or cancelled, and that their validity had been repeatedly recognized and confirmed by said Wright & Hoxse, by the payment, and indorsement on the note, of the annual interest thereby secured :   That the petitioner, at the first meeting of the creditors of said Wright & Hoxse, presented a petition to said judge of probate, setting forth the facts above mentioned, and also stating that the property intended to be secured by the mortgage aforesaid had been taken by the messenger, under the warrant issued according to the provisions of the insolvent laws, and praying that said property might be sold, and the proceeds thereof applied to the payment of said note, and that he might be admitted as a creditor for the residue, if any ; referring to the schedules and return of the messenger for a description of the property to be sold ; but that said judge of probate " did order and decree that the prayer of said petition should not be granted : " That a large amount of the property intended to be conveyed and hypothecated, as aforesaid, was taken by said messenger, and afterwards by the defendant, as assignee, in behalf of the general creditors of said Wright & Hoxse :   That although, in the course of the business of said Wright & Hoxse, the identical property which was sold and delivered to them, as aforesaid, by the petitioner, was changed into other forms, yet the proceeds thereof were so used and invested as to assume the form of and become the property thus taken by said messenger and the defendant ; that said property, thus taken and held by force of said mortgage, was a portion of the property and earnings of Wright & Hoxse's tan works, and was described in said mortgage, and therein pledged and hypothecated to the petitioner ; and that said Wright & Hoxse continued their business as tanners until said warrant issued.

The petitioner's *prayer* was, that the property aforesaid

taken by the defendant, as assignee, or the proceeds thereof. might be applied towards the payment of said note, and that he might be admitted as a creditor, for the residue thereof, if any, according to the provisions of *St.* 1838, *c.* 163, § 3 ; and that such other order or decree might be made in the premises, as law and justice might require.

The *answer* of the respondent averred, that all the property belonging to the said Wright & Hoxse, at the date of said note and mortgage, was afterwards, from time to time, disposed of by them, at their pleasure, and that at no time between the date of said mortgage and the taking of their property by the defendant, as assignee, did they ever set apart to the petitioner any specific portion of their property, which might have been purchased, if any was so purchased, with the proceeds of the property included in said mortgage ; nor did they ever account to the petitioner, specifically, for the proceeds of the same, or any part thereof; nor did they, in the purchase and acquisition of stock, or other property which might have belonged or come to them, after the date of said mortgage, make any distinction between such, if any, as was purchased or acquired with the specific proceeds of the property belonging to them when said mortgage was executed, and that which was the proper fruit of their own personal labor, money and income, or which accrued to them from any other source than the sale of said hypothecated property. Wherefore the respondent prayed that the decree of the judge of probate might be affirmed.

The arguments in this case were submitted in writing.

*Huntington*, for the petitioner. By the express provision of *St.* 1838, *c.* 163, § 18, this petition is to be heard as a case in chancery, and is therefore to be decided by the application of the principles of equity. Hence the case does not come within the principles laid down in *Jones* v. *Richardson*, 10 Met. 481, which was a decision at common law. Indeed, in that case the court seem to admit that the application of equity law would have led to a different conclusion.

The character and terms of the mortgage are to be carefully

considered.   The debt to the petitioner existed when the
mortgage was executed, and was concurrent therewith.   It
was not a fraudulent preference.   It recites the transaction,
and shows that the original sale, for which the note and mort-
gage were given, was in a measure conditional, and that the
ownership, whatever form the property might assume, was
never wholly and absolutely divested, but was subjected to a
lien.   The instrument is a mortgage and something more.   It
is a contract executed and executory.   It protects the prop-
erty, under all changes and forms, on its face.   It purports to
be a mortgage and an hypothecation.

The mortgage was recorded when made, which in law is
equivalent to a delivery and possession by the mortgagee.
And as it recites the nature of the transaction, and gives
notice to creditors, by the recording, of the hypothecation
— of the executory character of the pledge — it must be con-
sidered as creating a potential possession of the after acquired
property, as against other creditors.

The payment of annual interest on the mortgage note, and
indorsed thereon, is in equity a renewal of the mortgage each .
year, and attaches to the property then on hand, though
acquired after its execution.

It is also material to be noted, that the application of the
mortgagors for the benefit of the insolvent laws was volun-
tary.   They instituted the proceedings in insolvency.

It is a settled principle, that the property in the hands of
the assignee is subject to all the equities to which it would be
subject in the hands of the mortgagors themselves.   And
there can be no doubt that the instrument created an equitable
lien on after acquired property, upon general equity principles.
The petitioner being the original owner of the .property, and
having taken a mortgage of it, as security, it is, in the lan-
guage of Putnam, J. (*Macomber* v. *Parker*, 14 Pick. 505,)
" a transaction which the *law* delights to uphold, if it can."
*A fortiori* will equity delight to uphold it.

The cases of *Eastman* v. *Foster*, 8 Met. 22 – 27, and
*Davis* v. *Newton*, 6 Met. 542 – 545, show how far the court

has already gone, as a court of chancery, in protecting equitable liens, in construing the insolvent act of 1838.

As to power to mortgage after acquired property, see also Story on Bailm. § 294. *Mitchell* v. *Winslow*, 2 Story R. 630. After the reasoning in this last case, and the authorities there cited, it would be useless to discuss the question at length, in the present case. Since that decision, the main question here is, whether this court, sitting as a court of chancery, will apply the principles of the common law, or the principles of equity, in a case enjoined by the legislature to be heard in equity only.

*Delano*, for the respondent. The answer of the respondent shows that none of the property which was sold and delivered to Wright & Hoxse, and mortgaged back to the petitioner, can be specifically traced into the respondent's hands. Undoubtedly some portion of the proceeds of that property may have their equivalent in the mass of the property assigned to the respondent; but his answer likewise shows that it is impossible to determine the extent, proportions or value of this equivalent.

In answer to the suggestion of the petitioner's counsel, that the original sale was never absolute, but was in a measure conditional, and that the vendor retained a lien, the reply is, that if it be meant that a lien resulted, independently of the mortgage back, no such doctrine is applicable to personalty; and that, in case of realty, the vendor waives his lien, whenever he takes his security for the purchase money, in a distinct and independent form. 2 Story on Eq. §§ 1222, 1226 *et seq.* But supposing it to be otherwise, and that the petitioner did, upon the original sale, retain a lien; yet, the original property having disappeared, *that* lien cannot avail him, unless it silently extended itself, from time to time, over newly acquired property, without any agreement to that effect; which will hardly be contended. Submitting, therefore, that no lien resulted to the petitioner, unless by force of the mortgage, the question is, whether the mortgage itself confers a lien; and, if so, whether it can prevail against the assignee under the insolvent law.

1. Our proposition is, that if the after acquired property was in such a plight, on the day of the first publication of notice by the messenger, that it might have been taken in execution and held against the mortgagee, it is, by express provision of *St.* 1838, *c.* 163, § 5, made the assignee's, and cannot, therefore, be the mortgagee's.  The words of that section are, that the "assignment *shall vest* in the assignees all the property of the debtor, both real and personal, which he could by any way or means have lawfully sold, assigned or conveyed, or which might have been taken in execution on any judgment against him, at the time of the first publication of issuing the above mentioned warrant, although the same may then be attached on mesne process, as the property of the said debtor." No equitable right is open to the petitioner, against this statutory provision.  In all cases, where a rule of property is prescribed by statute, *æquitas sequitur legem.*  And it is impossible to see any good reason, legal or equitable, why property which *is* attached, and property which *may be* attached (or taken in execution, which is the same thing) should be placed in two entirely distinct categories.

The position, taken for the petitioner, that it is a prevailing principle, in bankruptcy and insolvency, that the assignee takes only the assignor's rights, subject to the equities of third persons, is sound, in cases where the particular bankrupt or insolvent act has not ordered otherwise.  But the legislature may enlarge or restrain the assignee's rights, at its pleasure.

Thus far, we have assumed that the after acquired property in question might have been taken in execution on a judgment against Wright & Hoxse.  This must depend on the question of the efficacy of the mortgage at law ; and that it could not stand, at law, is settled by the case of *Jones* v. *Richardson,* 10 Met. 481.  See also *Lunn* v. *Thornton,* 1 Man, Grang. & Scott, 379.  *Gale* v. *Burnell,* 7 Adolph. & Ellis, N. R. 850.  The mortgage could vest no future interest in the petitioner. without some new intervening act or conveyance, to give life and vigor to the precedent conveyance, according to Lord

Bacon's maxim, cited by Wilde, J. in 10 Met. 492. No such act is shown to have been done.

2. An instrument purporting to transfer after acquired property creates no equitable lien. In looking through the opinion of Story, J. in the case cited against us, on this point, (*Mitchell* v. *Winslow*, 2 Story R. 630,) it will be seen how much weight he gives to the *dicta* of Vice Chancellor Wigram, in *Langton* v. *Horton*, 1 Hare, 549. But it distinctly appeared, in this last case, that there had been a delivery to the mortgagee ; so that there had been a new and intervening act, which gave life and vigor to the original instrument. And in *Mogg* v. *Baker*, 3 Mees. & Welsb. 195, the court of exchequer made a decision contrary to that of Story, J. in *Mitchell* v. *Winslow*, and to the *dicta* of Wigram, V. C. It has not, therefore, yet become a doctrine of equity jurisprudence, that a mortgage of a mere prospect of property creates an equitable lien.

3. Admitting, for argument's sake, Judge Story's doctrine of lien, yet this court has not the power to enforce such a lien. If, under the ordinary equity jurisdiction of this court, irrespective of § 18 of the insolvent act, the mortgagee could have had no relief, he can have no more ample relief under that section ; that is, § 18 opens no new department of equity jurisdiction, but only enables the court to apply its old jurisdiction in a more summary manner. Otherwise, by the very act of going into insolvency, or by driving a debtor into insolvency, a multitude of new remedies might spring up in favor of special claimants, to the utter exhaustion of the assets, and the law be made to operate for the relief of particular creditors ; though its acknowledged policy is to benefit the general creditors. Are there, then, any equitable liens, which could not be enforced under the ordinary jurisdiction of this court ? Judge Story says there are many, and that this very species of lien, now in question, is among the number. *Fletcher* v. *Morey*, 2 Story R. 566, 567. And this court has held that its ordinary jurisdiction does not extend to equitable mortgages. *Eaton* v. *Green*, 22 Pick.

526.   Would the court, then, under the insolvent law, authorize the vendor of real estate to assert his lien, or the mere depositary of title deeds to come before the judge of probate or master, and pray that his equitable mortgage might be satisfied out of the insolvent debtor's estate ?

The cases of *Eastman* v. *Foster*, 8 Met. 19, and *Davis* v. *Newton*, 6 Met. 537, have been cited, to show how far this court will protect equitable rights under the insolvent act.   But it is submitted, that the same rights would have been protected by the court, in the exercise of its ordinary jurisdiction in equity.   The first of these cases was a clear case of trust, and might have been enforced in favor of the *cestuis que trust*, under the ordinary jurisdiction over trusts.   In the other of those cases, the notes were designedly so held that the husband's creditors should never reach them, or the proceeds of them, by attachment or execution, so that they were not properly within § 5 of *St.* 1838, *c.* 163.   And the wife's equitable right to a provision will be protected under the ordinary jurisdiction of the court.   *Sawyer* v. *Baldwin*, 20 Pick. 387.   *Page* v. *Estes*, 19 Pick. 271.   This protection is often afforded by injunction.

4.   To hold a lien, like that now claimed, to be valid under the insolvent law, would lead to absurd consequences.   If the after acquired property had been under attachment at the time of the first publication, and the attachment had been dissolved, it could not be successfully contended that, in equity, the effect of the dissolution would be to let in a lien, to the exclusion of the general creditors.   If not, then the absurdity, to which the petitioner's doctrine leads, is this, viz. that the general creditors, in order to secure the property for general distribution, must first cover it with attachments thus multiplying suits, and absorbing the assets.

5.   The assignee, in a case like this, where there is no notice by the record, to creditors, must take the property as a *bona fide* purchaser without notice.

*Huntington,* in reply.   1.   The respondent, under the first division of his argument, places the whole strength of

his case on the terms and verbal force of a single clause of
§ 5 of the insolvent act, in relation to property liable to be
" taken in execution."   The case of *Grant* v. *Lyman*, 4
Met. 470, gives a judicial construction to this clause, at
variance with that given by the respondent.   The court say
it was intended merely to cover fraudulent conveyances by
the debtor.   On reading that clause, in connexion with what
follows it, and with § 3, on which this petition is founded,
the court will find mortgages, liens and pledges of all kinds
protected.

It is conceded that the mortgagors could not have sold or
conveyed this property.   The mortgage was good, at common
law even, between the parties to it.   10 Met. 492.   To
contend that the mortgagee's property is divested, because it
comes within the language respecting property that may be
taken on execution, proves too much.   It would divest the
title of every mortgagee, whether of personal or real estate ;
for by the revised statues all such property may be seized on
execution and sold, subject to a mere demand, in one case,*
and set off, in the other.   It would divest an insolvent debtor's
wife of an inchoate right of dower, which is recognized as a
valid lien in bankruptcy.   Going from the letter to the spirit
of the act, we find that it protects all liens, save that by
attachment.   By excepting that, it affirms all others.

If an attachment had intervened, in this case, we do not
perceive why, if a mortgage *subsequent* to an attachment, as
in *Grant* v. *Lyman*, would hold good, while the attachment
was displaced, a *prior* lien would not be protected.   If the
property is " placed in two entirely distinct categories," it is
the fault of the legislature, who did this very thing in a case
like that of *Grant* v. *Lyman*.

The case of *Jones* v. *Richardson* was that of a mortgage
executed, not also executory.   The maxim of Lord Bacon,
cited in that case, applied only to attaching creditors, not as
between the parties.   But even as to the parties, Wilde, J.
held that an act of the mortgagor, affirming the mortgage,

---

* But see *Lyon* v. *Coburn*, 12 Met. 310.

would be sufficient. That was all which was required in *Lunn* v. *Thornton,* and *Gale* v. *Burnell,* cited by the respondent. Any new act is sufficient, according to Lord Bacon. Now, in the case at bar, the payment of interest each year was an annual appropriation and delivery of a portion of the proceeds of the property originally conveyed; a delivery of part in recognition of the liability of the whole; possession given of a part, in its new form, to wit, in money, in renewal and perpetuation of the contract.

2. Under the second head, we suppose the respondent means to say, that an instrument purporting to convey after acquired property, the product of property previously conveyed, creates no equitable lien. And it is said that although Judge Story held the contrary, in *Mitchell* v. *Winslow,* 2 Story R. 630, yet he did not thoroughly examine the authorities, but relied on *dicta* in the case of *Langton* v. *Horton,* 1 Hare, 549, which was, in its important facts, not in point. It is to be remarked, however, that Judge Story placed stress, *not on the facts* of the case in Hare, but on the reasoning of the vice chancellor on the general question. And the case of *Mogg* v. *Baker,* 3 Mees. & Welsb. 195, which has been relied on, as shaking the decision of Judge Story, decides merely that an agreement to convey, at a future day, after acquired property, does not create an equitable lien, and that an agreement to mortgage, at a future day, specific property, does create such lien. That case, therefore, merely limits a principle, which is often adopted in equity, viz. to consider a thing done which is agreed to be done, and which, in the case at bar, is actually done by the mortgage itself. The argument of the respondent confounds an agreement to execute a mortgage, at a future day, of after acquired property, with an actual mortgage of such property — an agreement to do a thing, with its actual performance.

3. The respondent, to avoid the pressure of the equitable claims of the petitioner, contends that the court has no power to grant his prayer; that they have no new jurisdiction, under *St.* 1838, *c.* 163, but are to exercise the old in a more

summary manner. This limitation and restriction of power is not found in that statute. Besides; this is an equitable lien recognized by that statute itself. The provision, in $ 3, on which this petition is founded, is for the sale of property when "any creditor has *any* mortgage or pledge of any real or personal estate of the debtor, or *any* lien thereon." Still further; this petition does not require the exercise of extraordinary jurisdiction, because the instrument in question is a mortgage, *eo nomine,* and the petition is by a creditor who holds a mortgage good at common law, as between mortgagor and mortgagee. 10 Met. 492 – 494. Had there been no insolvent proceedings and no attachment in this case, and the mortgagee had taken possession, the common law would have protected him. The mortgagors could not have redeemed, without a tender of the sum due.

The insolvent law has enlarged the equity powers of the court since the decision in *Eaton* v. *Green,* and the court has not since hesitated to exercise that power in cases of equitable liens created by mortgage. *Eastman* v. *Foster,* 8 Met. 19. *Davis* v. *Newton,* 6 Met. 537.

4. The absurdity with which the respondent charges the petitioner's doctrine, is nothing but what the insolvent law produces, by providing that a creditor must attach and make costs, in order to compel a debtor to go into insolvency.

5. The question, whether the assignee takes this property as a purchaser without notice, is not raised in the present case. The mortgage was recorded; and as it recites the nature of the lien and its executory prospective character, creditors are bound by the legal effect of its terms. If it creates an equitable lien, the creditors had notice of that lien. 8 Met. 25.

DEWEY, J. The positions taken by the opposing counsel have been fully and ably presented, in their respective arguments; but, in the view we have taken of the case, it has become unnecessary to express any opinion upon several of the points raised. We have directed our attention more particularly to one, which is a leading and material one, and decisive of the case.

The instrument offered in evidence by the petitioner, as the foundation of his claim, purports to convey to him certain articles of personal property, consisting of hides, skins and bark, all then in existence, and in the possession of the grantors, and also whatever hides, skins, bark or stock, of whatever description, that may hereafter belong to the grantors, wherever situated, and whether manufactured or not, and at market or not, or the proceeds, if sold; also, all leather thereafter manufactured from the proceeds of property then on hand, and in whatever shape the property might thereafter exist, or whatever form it might assume; so that the then present and future property and earnings of the tan works might stand conveyed, pledged and hypothecated to the petitioner.

' This instrument, so far as it purports to mortgage the property of the mortgagors then in existence, and held by them, was in all respects a valid instrument; and if any such property now remains for it to operate upon, it will be effectual *to pass the same to the petitioner.* We understand, however that the case shows no such property in the hands of the assignee, and that the specific property conveyed by the petitioner to Wright & Hoxse, and by them reconveyed in mortgage to him, has no longer any existence, and that the only ground of sustaining this petition is that of a lien upon subsequently acquired property, which had no existence at the time of the execution of the mortgage, and which has no other connexion with it, than that, to some extent, it may have been purchased with funds which were the proceeds of various sales from the tannery; first of the articles purchased, and their proceeds applied to the purchase of new stock, which, when manufactured, was again sold, and its proceeds invested; and so from time to time. This instrument is clearly, therefore, an attempt to mortgage or hypothecate after acquired property. Can such security be made effectual by the making and recording of such instrument, without any further act of the parties, with no delivery by the mortgagor, and no act on the part of the mortgagee

taking possession or exercising any rights of property in the newly acquired articles, by virtue of the provisions in the mortgage, as to such property ?

This subject has been recently before us, in the case of *Jones* v. *Richardson*, 10 Met. 481, involving the question as to the validity of such a mortgage in a court of law. The subject was very maturely considered, and the court were all clearly of opinion that such mortgage did not pass after acquired property. It was stated, in that case, as an elementary principle, that " a person cannot grant or mortgage property of which he is not possessed, and to which he has no title." All the qualification introduced was, that one may grant personal property of which he is potentially, though not actually, possessed ; as in the case of the grant of all the wool that shall grow on the sheep he owns at the time of the grant, but not wool which shall grow on sheep not his, but which he may afterwards buy.

In our opinion these principles as to conveyances of property are equally sound, and equally to be enforced, whether the question as to the right of property is raised in a court of law, or of equity. The parties appear before us, each claiming the property by conveyance ; the petitioner by the instrument already recited, and the defendant as assignee, holding by virtue of a deed from a master in chancery, for the benefit of all the creditors of Wright & Hoxse. Whether it would really be more equitable, in a case like the present, that the after acquired property should be holden by the one party or the other, whether the claims of the individual creditor would, in an equitable view, be more meritorious than those of the entire body of creditors, seeking a distribution *pro rata*, would depend, not so much upon any thing disclosed on the face of the mortgage, as upon a full knowledge of the entire course of business of the mortgagor, and the circumstances appertaining to the property which is now the subject of controversy, the mode of its acquisition, &c.

Supposing ourselves clothed with full equity powers, and treating this case as before us unembarrassed by any question

3 *

as to our limited jurisdiction in chancery, we are not satisfied that the petitioner has shown any such title to this property as would authorize us to hold it to be subject to a lien for the note of Wright & Hoxse to the petitioner, as against creditors who have acquired a right to it before any act of the petitioner had taken place, reducing the property to his possession, or by asserting effectually any right under the prospective hypothecation, as by making a claim and taking possession under it, while in the possession of Wright & Hoxse. There are doubtless equitable liens, which may be enforced in courts of equity, though not available in a court of law. Many such might be enumerated.    That which nearest approaches the present case is that of an agreement to convey property, or do some act, the performance of which has been casually postponed ; and in dealing with the rights of the parties in such case, a court of equity will consider a thing done which was agreed to be done.    That class of cases does not present, however, the difficulties that arise in the present case. The property which is the subject of the agreement, in the case supposed, was in existence, and the power to convey the same, or stipulate for a conveyance, existed.    Nor do the cases of *Davis* v. *Newton,* 6 Met. 537, and *Eastman* v. *Foster,* 8 Met. 19, at all conflict with the view we have taken of the present case.    The property, in reference to which those cases presented questions, was in existence, was susceptible of being conveyed, and was the subject of bargain and sale. In the case of *Eastman* v. *Foster,* more particularly relied upon, the mortgage was a good and valid mortgage in law, and of property then in existence ; and the party only went into equity to enforce a claim arising under such valid mortgage.    The case was one of implied trust, of which this court has jurisdiction, and which it may well enforce.

The difficulty that presses in the present case is the want of any binding original contract, which *per se* could have force and effect to change the after acquired property, without some further act by the parties, after the property should have come into existence.    Such act we deem to have been

necessary to perfect the title of the petitioner, whether his rights of property in such after acquired articles are sought to be enforced in equity or at law. We are fully aware that a different view of this question was taken by Mr. Justice Story, in the case of *Mitchell* v. *Winslow*, 2 Story R. 630, and that the result to which he came differs from ours as to the effect to be given to such mortgages in a court of equity. In relation to that case, it is supposed by the counsel for the petitioner, that it had, to some extent, the sanction of this court, in the remarks of the judge who delivered the opinion in the case of *Jones* v. *Richardson*. But we apprehend that no such view was intended to be suggested. The case then before the court was an action at law ; and the obvious and quite sufficient answer to the case of *Mitchell* v. *Winslow*, which was relied upon by the then plaintiffs, was, " that was a case in equity," without entering upon the further inquiry whether we should, as a court of equity, in a case before us, come to the same result. The case of *Langton* v. *Horton*, 1 Hare, 549, much relied upon as sanctioning the doctrine that such conveyance might be supported in a court of equity, seems to us to go no further than this, viz. that there having been such a contract between the parties, as would in equity have given the plaintiff a title to the cargo when it arrived, and that contract having been perfected by possession lawfully taken, it being a case of property mortgaged while at sea, and it being sufficient to take possession forthwith on its arrival, the plaintiffs were entitled to hold under this contract, as against a judgment creditor. On the other hand, another adjudication may be referred to as strongly sustaining the view we take of the invalidity of this mortgage, *in equity.* I allude to the case of *Mogg* v. *Baker*, 3 Mees. & Welsb. 195, in the court of exchequer. As I understand that case, the doctrine that a lien may be enforced in equity, in a case like the present, is wholly repudiated. The court held that an agreement to mortgage certain specific furniture then in existence would constitute an equitable title in the party holding such agreement, and prevent its passing to the assignees

of the insolvent ; but if it was only an agreement to mortgage furniture to be subsequently acquired, then it would confer no right in equity.    It is true, as was remarked by the counsel for the petitioner, that the court were dealing there with the equity principle of construing that to have been done which was agreed to be done ; but no question arose as to the correctness of that principle of equity, and the only point of controversy was, whether, taking that to have been done which was agreed to be done, it would constitute a valid equitable lien.    And whether it would do so or not, was made to depend upon the fact whether the property was subsequently acquired ; and, if so, it was held that the agreement would confer no right in equity.    The doctrine of that case, which seems fully to sanction the principle we have adopted in the present case, was affirmed by the court of Queen's Bench, in *Gale* v. *Burnell,* 7 Adolph. & Ellis, N. R. 850.

The result to which we have come, upon the present petition, may be stated in the following propositions :    The petitioner cannot hold the property in controversy, as mortgaged property, because it was not in existence, and therefore not capable of being conveyed in mortgage, at the time when the mortgage was made.    The instrument could not operate to pass the property as a pledge, because the custody of the same was not taken and retained by the pledgee.    The property cannot be held as charged with a lien, because a lien cannot be created by an executory agreement, without being accompanied by possession or delivery of the property.    A stipulation that future acquired property shall be holden as security for some present engagement, is an executory agreement, of such a character, that the creditor with whom it is made may, under it, take the property into his possession, when it comes into existence, and is the subject of transfer by his debtor, and hold it for his security ; and whenever he does so take it into his possession, before any attachment has been made of the same, or any alienation thereof, such creditor, under his executory agreement, may hold the same ; but, until such an act done by him, he has no title to the same ; and that, such act

being done, and the possession thus acquired, the executory agreement of the debtor authorizing it, it will then become holden by virtue of a valid lien or pledge. The executory agreement of the owner, in such case, is a continuing agreement, so that when the creditor does take possession under it, he acts lawfully under the agreement of one then having the disposing power, and this makes the lien good. If, however, before taking possession, or doing such acts as are necessary to give vitality to the mortgage, as to the subsequently acquired property, an attachment or assignment for the benefit of creditors takes place, the opportunity for completing the lien is lost, and the mortgage or pledge not being perfected, the property passes to the assignee, and must be held by him for the benefit of the creditors generally.

There was no act done by the petitioner and by Wright & Hoxse jointly, or by either of the parties, which was sufficient to give effect to the original mortgage, as to the after acquired property. The recording of the mortgage by the petitioner did not; for that was before such property was acquired. The annual payment of interest by Wright & Hoxse could have no such effect. It was neither actually nor symbolically accepting the transfer or conveyance of the articles after they were acquired by Wright & Hoxse.

As to the point suggested, that this agreement between these parties might be treated as a conditional sale by the petitioner, the change of property to take effect only on payment of the note ; it was competent for the petitioner to have made such a conditional sale, and the effect of such sale would have been, that he would not have been divested of the property in the articles thus conditionally sold. But no such principle can avail the petitioner here, as no articles remain in existence that were his property and possessed by him at the time of the sale. The petitioner seeks not to reclaim such articles, but those subsequently acquired by his debtors. Nor is there any ground for the suggestion that this may be treated as the constitution of an agency on the part of Wright & Hoxse, and that, as such agents, all their acquisitions would

enure to the petitioner as the principal, until the note of Wright & Hoxse was fully paid.

In no way, that we perceive, can we give effect to this contract, so as to give the petitioner the lien, upon the after acquired property, that he seeks to establish.

*Petition dismissed with costs.*