THE MAYOR AND COUNCIL OF THE BOROUGH OF ALPINE, PLAINTIFF-APPELLANT, v. MARY E. BREWSTER AND GEORGE L. BREWSTER, DEFENDANTS-RESPONDENTS.

Argued February 19, 1951—Decided April 16, 1951.

*Mr. C. Conrad Schneider* argued the cause for appellant. *Messrs. Schneider and Schneider,* attorneys.

*Mr. George Winne* argued the cause for respondents. *Messrs. Winne & Banta,* attorneys.

The opinion of the court was delivered by

HEHER, J. The plaintiff municipality sues in equity to restrain uses of land and buildings alleged to be in contravention of the local zoning ordinance; and the essential question is whether such relief may be had under *R. S.* 40:55-47.

 The equity division of the Superior Court dismissed the complaint before answer made on the ground that the acts thereby laid to defendants, singly or together, do not constitute a nuisance, and the court was without jurisdiction to enforce the zoning ordinance by the injunctive process at the instance of the municipality. The principle that, absent a nuisance, enforcement of a municipal ordinance may not be had by the equitable remedy of injunction was declared in *Ventnor City v. Fulmer*, 92 *N. J. Eq.* 478 (*Ch.* 1921), affirmed 93 *N. J. Eq.* 660 (*E. & A.* 1922); *Srager v. Mintz*, 109 *N. J. Eq.* 544 (*E. & A.* 1932); *Baird v. Board of Recreation Commissioners of South Orange*, 110 *N. J. Eq.* 603 (*E. & A.* 1932). These cases were deemed controlling.

The municipality's appeal to the Appellate Division was certified here for decision on our own motion.

The defendant Mary E. Brewster is the owner of three pieces of land within the borough: the first acquired by deed on July 16, 1934; and the second and third, on September 27, 1946. The zoning ordinance was adopted on November 14, 1939. These parcels were placed in a Residence "A" zone, restricted to single-family dwellings and accessory uses, including "private garages and any other customarily accessory building." By an ordinance adopted on October 11, 1949, the lands were included in "District R-1," limited to one-family detached dwellings "and private garage," defined according to the complaint as "garage facilities accessory to a residential building on the same lot used only for the storage of not more than four (4) non-commercial vehicles and not more than one (1) light truck used exclusively by the owner of the lot." It was provided that "All other garages shall be deemed public garages." The enforcement section of the ordinance directs that the "continuance" of a prohibited use, "or the erection of any building for said use, shall be a separate and distinct violation * * * for each day that said use is continued or that the building is erected or maintained to said use;" that a violation of any of the provisions of the ordinance shall entail a fine not to

exceed $200 for each offense, and in default of payment the violator may be imprisoned in the county jail for a term not to exceed 90 days, in the discretion of the magistrate; and that no provision thereof "shall be construed to prevent" the borough "from taking injunctive proceedings for the proper enforcement" of the ordinance.

The complaint avers that the Borough of Alpine is "a beautiful residential community" of 700 inhabitants, extending six or seven miles along the Palisades—a community of "large estates and beautifully kept one-family residences," without "industrial or commercial uses" except "two small gas stations and a small store located in the section * * * designated for business;" that it is an area of "great scenic beauty" bordering on the State of New York, much of which is devoted to park purposes under the auspices of the Palisades Interstate Park Commission, and a mecca of tourists and travellers; that the State of New Jersey is now building "a parkway" through the borough, and large expenditures of money are being made "to maintain the beauty of this Ridge of the Palisades;" that the local "taxpayers have expended large sums of money on their property to maintain its beauty and have been attracted by the community and have maintained their homes there because of its freedom from noise, smoke, odor and commercialism;" and that it is local policy, established long since, to maintain the "residential character" of the community and to "prevent commercializing of the property." It is charged that the defendant George L. Brewster is using the lands in question and a building thereon "for commercial purposes in violation of the zoning ordinance," i. e. for the conduct of "the contracting business;" that he has "erected a gas tank" on the premises "and houses in said property large trucks which travel in and out of the property over the country roads of the Borough, carrying cinders and other building supplies;" that he has "stored upon said property diesel-driven tractors and a very large crane used for large construction work," and he has "also stored on the property building supplies, tires

and junk of every form and description together with old automobiles and equipment which he uses in his business together with additional booms;" that he uses other lands in the vicinity for "the storage of building materials;" and that "As a result of the violation, the large trucks, trailers and building equipment have caused destruction to the roads, have raised clouds of dust and have destroyed the residential character of the surrounding neighborhood and if continued will break down the residential character which the governing body and the residents have worked to maintain for such a long time;" that promises by defendants to cease the violations of the ordinance have gone unfulfilled; and that the continuation of this use "will cause financial hardship to the residents in the immediate area, will destroy land values in the borough and will defeat" the settled plan to maintain the Borough "as a residential community."

*R. S.* 40:55–47, as amended in 1949, empowers the local governing body or board of public works to provide by ordinance for the enforcement of the zoning act and of any ordinance or regulation made thereunder. *Pamph. L.* 1949, *ch.* 242, *p.* 779. It is further provided that in case any building or structure is erected, constructed, altered, repaired, converted, or maintained, or any building, structure or land is used in violation of the zoning statute, or of any ordinance or other regulation made pursuant thereto, the local authority, "in addition to other remedies, may institute any appropriate action or proceedings to prevent such unlawful" structure or use, "to restrain, correct or abate such violation, to prevent the occupancy of said building, structure or land, or to prevent any illegal act, conduct, business or use in or about such premises." The earlier legislation was enacted pursuant to Article IV, Section VI, paragraph 5 of the Constitution of 1844, added by the amendment effective October 18, 1927; the amendment of the statute in 1949 was designed to conform the legislation to the revision of the constitutional provision made by Article IV, Section VI, paragraph 2 of the

Constitution of 1947 to include within the terms of the grant "the nature and extent of the uses of land."

Respondents contend that, if a nuisance at all, what is charged in the complaint is an indictable public nuisance which is wholly beyond the jurisdiction of equity to suppress, unless there be special injury to an individual, under the principle of *Hedden v. Hand,* 90 *N. J. Eq.* 583 (*E. & A.* 1919). There, it was held that a statute declaring houses of assignation and prostitution nuisances abateable by chancery's injunctive process contravened Article VI, Section I and Article X, Section I of the Constitution of 1844, assigning jurisdiction in criminal cases to other tribunals, and Article I, paragraphs 7 and 9 thereof, providing that no person shall be held answerable for a criminal offense unless on the presentment or indictment of a grand jury and securing the right of trial by jury. It was held that Chancery is concerned only with matters of civil right, resting in equity, or where the remedy at law is inadequate, and it was beyond the province of the Legislature to clothe the tribunal having that function with jurisdiction to abate a public nuisance "of a purely criminal nature," since this faculty resided exclusively in the courts of criminal jurisdiction at common law, where the judgment of conviction could also command the abatement of the nuisance.

At common law, a public nuisance is a criminal offense, defined as "an act not warranted by law, or an omission to discharge a legal duty, which act or omission obstructs or causes inconvenience or damage to the public in the exercise of rights common to all His Majesty's subjects." *Stephen's Digest of Criminal Law* (*art.* 255, *7th ed.*). Blackstone defines nuisance thus: "Nuisance, *nocumentum,* or annoyance, signifies anything that worketh hurt, inconvenience or damage." Public or common nuisances "are an annoyance to all the king's subjects," and are therefore classed "as public wrongs, or crimes and misdemeanors." Common nuisances are a species of offenses against "the public order and economical regimen of the state; being either the doing

of a thing to the annoyance of all the king's subjects, or the neglecting to do a thing which the common good requires." Common nuisances "are such inconvenient or troublesome offenses as annoy the whole community in general, and not merely some particular person, and therefore are indictable only, and not actionable; as it would be unreasonable to multiply suits by giving every man a separate right of action for what damnifies him in common only with the rest of his fellow-subjects." 3 *Blackstone's Com. p.* 216; 4 *Ibid. p.* 167. See *State v. Rodgers,* 91 *N. J. L.* 212 (*E. & A.* 1917); *Board of Health of Weehawken Twp. v. New York Central Railroad Co.,* 4 *N. J.* 293 (1950). But the Legislature may enlarge the category. There can be no doubt of the power of the lawgiver to classify and define public nuisances, and thus to modify the common-law classification. Apropos of this, Justice Holmes said: "It is settled that, within constitutional limits not exactly determined, the Legislature may change the common law as to nuisances, and may move the line either way, so as to make things nuisances which were not so, or to make things lawful which were nuisances, although by so doing it affects the use or value of property." *Commonwealth v. Parks,* 155 *Mass.* 531, 30 *N. E.* 174 (1892). Anything that unduly interferes with the exercise of the common right may be declared a nuisance and rendered abateable as such and otherwise remediable. But criminal sanctions may not be arbitrarily extended into the sphere of purely civil obligations. See *Salmond on Torts* 219 *n.*

The statute here does not in terms denominate a nuisance the violations of the zoning ordinance made the subject matter of the complaint, although it empowers the local authority to enforce the zoning statute and any regulation made thereunder and, to that end, to institute "any appropriate action or proceedings" to prevent and abate "unlawful" structures and uses. Violations of the zoning act or of local ordinances adopted in the exercise of the power are not made criminal offenses *eo nomine;* and penal statutes are on well-settled principles to be strictly construed, although the

clear implication and intendment of such a statute is not for that reason to be denied.

Yet if the transgressions alleged in the complaint be deemed to give rise to a continuing public nuisance indictable at common law, the statutory grant of the injunctive power to the local authority does not run counter to constitutional limitations. The jurisdictional infirmity found in *Hedden v. Hand, supra,* whether it be real or seeming merely, is not present here, for under the Constitution of 1947 law and equity functions are now merged in the Superior Court by a provision that vests in that tribunal original general jurisdiction throughout the State in all causes. *Article VI, Section III, paragraphs* 2, 4. See, also, *Article XI, Section IV, paragraph* 3. And in that view there would be no infringement of the cited provisions of the Bill of Rights of the State Constitution barring prosecution for a criminal offense unless on the presentment or indictment of a grand jury and securing the right of trial by jury, for the design of the statute is to render the injunctive process available to the local authority for the enforcement of the statutory zoning policy and the local regulations made under the statute, and not to punish criminal offenses as such. The remedial process of injunction is invoked in aid of the zoning power, not to enforce the law's penalties for crime. It is a civil remedy not punitive in essence; its employment does not afford absolution from criminal responsibility, if such there be. It is a means of serving the common interest in matters related to the social well-being, order and economy of the community. There is in this procedure no assumption of jurisdiction over criminal offenses for their prosecution and punishment in the enforcement of the laws denouncing crime and penal transgressions. It is to be noted here that in *Hedden v. Hand, supra,* the court found no case under the common law in this country or in England where a court of equity had taken cognizance of a public nuisance founded "purely on moral turpitude." But as regards the constitutional right of trial by jury in prosecutions for crime, no

distinction is made between offenses involving moral turpitude and those which do not. When we consider the true nature of the injunctive process as merely a remedial measure to effectuate the principle of zoning, in the interest of the community, the constitutional difficulty perceived in *Hedden v. Hand* disappears. There, it was conceded that Chancery had jurisdiction to afford relief against an indictable public nuisance at the suit of an individual who had suffered special injury beyond that inflicted on the public at large. This jurisdiction was sustained as aimed not at the suppression of a public nuisance as such, but the redress of a private wrong to an individual and his protection against irreparable injury. By a parity of reasoning, the jurisdiction may also be invoked to consummate zoning as a common civil right, quite apart from the punishment of what may also be a criminal offense.

A public nuisance is remediable on information by the attorney-general. The attorney-general may likewise proceed by a bill in equity; and if an individual has also sustained special damage over and above the public injury, he also may proceed by bill. *Bispham's Principles of Equity* (10th ed.) *section* 439. "In equity as in the law court, the attorney-general has the right, in cases where the property of the sovereign or the interest of the public are directly concerned, to institute suit, by what may be called civil information, for their protection." *Attorney-General v. Delaware and Bound Brook Railroad Co.*, 27 N. J. Eq. 631 (E. & A. 1876). See, also, *Hutchinson v. Board of Health of the City of Trenton*, 39 N. J. Eq. 569 (E. & A. 1885).

But, apart from the foregoing considerations, it was within the competency of the lawgiver to render the injunctive jurisdiction accessible to the local authority for the protection of the public right under zoning regulations against habitual intrusions. It was conceded in *Hedden v. Hand* that the Legislature could lawfully confer on the Court of Chancery the injunctive power "in a new class of cases to which such remedy is appropriate, or to extend the

jurisdiction of the court to a class of cases which by their nature may come properly within the sphere and application of equitable principles." Where the property rights of many citizens are involved, it is proper for the government upon their behalf to invoke the powers of equity. *Pom. Remedies, section* 480. Here, the constitutional function to enact "general laws" for the local regulation of zoning *ex necessitate* comprehends the power to make such laws effective. The Legislature may make the injunctive remedy available to the local authority for the enforcement of its regulations, and especially to prevent continuing transgressions, actual or threatened, irrespective of the penalties prescribed by the local rule, which in themselves are not deemed an adequate legal remedy. Compare *State Board of Milk Control v. Newark Milk Co.,* 118 *N. J. Eq.* 504 (*E. & A.* 1935). The common-law indictment afforded a full and complete remedy at law for a public nuisance, since the judgment of conviction provided for the abatement of the nuisance. *Attorney-General v. Heishon,* 18 *N. J. Eq.* 410 (*Ch.* 1867). In fine, the injunctive power given by the statute here under review is but a civil remedy for the enforcement of zoning in the common interest, and not the means of punishing criminal offenses in derogation of constitutional right.

This jurisdiction is one of common exercise elsewhere, both as respects public nuisances and the enforcement of zoning regulations, without any thought that the remedy constituted the prosecution and punishment of criminal offenses in disregard of the Bill of Rights and other constitutional limitations. A classic example is *In Re Debs,* 158 *U. S.* 564, 39 *L. Ed.* 1092 (1894), where the distinction is made between a civil remedy for the protection of the public right and a prosecution for crime. See, also, *Mugler v. Kansas,* 123 *U. S.* 623, 8 *S. Ct.* 273, 31 *L. Ed.* 205 (1887); *Eilenbecker v. District Court of Plymouth County, Iowa,* 134 *U. S.* 31, 10 *S. Ct.* 424, 33 *L. Ed.* 801 (1890). The public concern in the enforcement of zoning sustains the legislative grant of the injunctive process to that end. *Town of Lexington v. Govenar,* 295

*Mass.* 31, 3 *N. E.* (*2d*) 19 (1936); *Town of Lincoln v. Giles,* 317 *Mass.* 185, 57 *N. E.* (*2d*) 554 (1944); *Town of Burlington v. Dunn,* 318 *Mass.* 216, 61 *N. E.* (*2d*) 243 (1945); *Leigh v. City of Wichita,* 148 *Kan.* 607, 83 *Pac.* (*2d*) 644, 119 *A. L. R.* 1503 (1938); *City of Sioux Falls v. Bessler,* 68 *S. D.* 635, 5 *N. W.* (*2d*) 633 (1942); *City of Knoxville v. Peters,* 183 *Tenn.* 93, 191 *S. W.* (*2d*) 164 (1945); *City of San Mateo v. Hardy,* 64 *Cal. App.* (*2d*) 794, 149 Pac. (*2d*) 307 (1944).

The judgment is reversed; and the cause is remanded for further proceedings not inconsistent with this opinion.

CASE and OLIPHANT, JJ., concurring in result.

*For reversal*—Chief Justice VANDERBILT and Justices CASE, HEHER, OLIPHANT, BURLING and ACKERSON—6.

*For affirmance*—Justice WACHENFELD—1.