179 N.J. Super. 389 (1981)
432 A.2d 135
DIV. OF HEALTH, DEPARTMENT OF HEALTH & WELFARE AND THE CITY OF NEWARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY ON BEHALF OF THE STATE OF NEW JERSEY, PLAINTIFFS,
v.
JOSEPH ROGERS, DEFENDANT.
Superior Court of New Jersey, Chancery Division Essex County.
Decided January 12, 1981.
*391 Frederick D. Miceli, Assistant Corporation Counsel, for plaintiffs (Salvatore Perillo, attorney).
Gary J. Cucchiara for defendant (Walter R. Cohn, attorney).
DWYER, J.S.C.
The major question presented by this case is whether the City of Newark, a municipal corporation of New Jersey, which has not established a separate entity as a local board of health pursuant to N.J.S.A. 26:3-1 et seq. (city), may compel the owner of a fire-gutted, uninhabited but ostensibly secure residential structure to raze said structure at the owner's expense by means of an action in the Chancery Division for a mandatory injunction, based upon its alleged common law right to abate a public nuisance or its alleged rights under N.J.S.A. 26:3-56. The aforementioned statute provides:
The local board, instead of proceeding in a summary way to abate a nuisance hazardous to the public health, may institute an action in the Superior Court, in *392 the name of the State, on relation of the board, for injunctive relief to prohibit the continuance of such nuisance.
Defendant Joseph Rogers asserted that the structure did not constitute a nuisance within the meaning of the health statutes; hence, no injunction to demolish under the health statutes was necessary and could not be properly granted.
The basic pleadings and facts, which are undisputed, may be simply summarized.
While the city was proceeding against Rogers in the municipal court for alleged code violations, the city commenced this action by verified complaint supported by affidavits of personnel from the Code Enforcement Agency drawn from the Building Inspection Department, the Fire Prevention Bureau, the Electrical Code Department, as well as adjoining real property owners. The subject property is located diagonally across from an elementary school, had been the subject of several fires, and the owner had been cited a number of times for code violations. Allegedly the roof was open to the elements, the structure was open to intrusion, particularly by children, the stairs and supporting members were weak, the fire stops were destroyed, the front porches were unsupported and in danger of collapse, and the premises were strewn with debris.
Because city relied upon its common law power to abate a public nuisance and the provisions of N.J.S.A. 26:3-56, it sued in two capacities. The significance of a suit ex rel. is that the party on whose relation the suit is brought is the agent or instrumentality of the named party, cf. State ex rel. Hillside Tp. Bd. of Health v. Mundet Cork Corp., 126 N.J. Eq. 100 (Ch. 1939), aff'd 127 N.J. Eq. 61 (E. & A. 1941). This suggests that the suit is one that the official or board must have initially been capable of instituting in his, her or its official capacity. In this matter the reference is to N.J.S.A. 26:1A-26 to 31.
The city has not established a local board of health as a separate entity apart from the local municipal government under N.J.S.A. 26:3-1, but relies upon its inherent powers to *393 enforce applicable health laws. See Jones v. Buford, 132 N.J. Super. 209 (App.Div. 1975), rev'd on other grounds 71 N.J. 433 (1976).
The city had prima facie standing to assert the cause of action pleaded. However, the city sought an immediate ex parte order for the removal of debris, boarding up of the premises, as well as an order "immediately requiring defendant ... to have the building demolished in a safe and approved manner and to fill in all excavations in a workmanlike fashion."
There was no affidavit from the city establishing that conditions of disease, pollution, noxious fumes, poisonous gases or increase of vermin were attributable to the subject property. The described conditions appeared to fit within N.J.S.A. 40:48-2.5 et seq., the statute which authorizes a municipality to adopt an ordinance for buildings in that municipality which are unfit for human habitation or occupancy, without any support for a finding of imminent danger to life. The court denied any ex parte relief but fixed a short return date. See State ex rel. Pompton Lakes Bd. of Health v. E.I. DuPont de Nemours Powder Co., 79 N.J. Eq. 31 (Ch. 1911).
Before the return date Rogers filed an affidavit in opposition and an answer and counterclaim. For purposes of this decision, there is no need to detail the allegations of the counterclaim set out in four broad sweeping counts alleging, among other matters, claims for compensatory relief due to city's failure to provide adequate police and fire protection. The merits of the counterclaim are dealt with on a separate motion for summary judgment by the city.
In the affidavit and answer Rogers set forth that he was a carpenter, purchased the subject property two years earlier as a burned-out structure, had not been able to obtain any fire insurance because the structure was unoccupied, had built a new roof and new back stairs, installed new windows, installed new sheet rock, caused certain new plumbing to be installed and did other work, at an aggregate value of $10,000 in his opinion. *394 Thereafter, another fire occurred, as a result of which he lost most of the value of his work. He averred that he closed up door and window openings with plywood, cautioned the police to watch the place, personally inspected the place and from time to time replaced the plywood allegedly ripped off by vandals. The front porch overhangs were not structurally dangerous because the supporting members for the porch decks were nailed to the members of the main structure. There was no electric or gas service to the premises. He asserted that unless a stranger started a fire, or lightning hit and caused one, the structure did not pose a hazard. He also averred that he had inspected the property and again replaced missing plywood. He also averred that he had his counsel tender a deed to the property to the city after the recent fire and several months before the commencement of this action, but that the city had never responded.
On the return date the judge permitted the parties to supplement the affidavits by testimony from a limited number of witnesses. That testimony confirmed what had been set forth in the affidavits, but explained it in greater detail.
The evidence before the court was not sufficient to support a finding that the subject premises were a source of "offensive matter, foul or noxious gases or vapors, water in which mosquito larvae breed," or the source of any disease such that there was an imminent threat to the health of the community. See N.J.S.A. 26:3-46; N.J.S.A. 26:1A-26 and 27. The court declined to issue any injunctive relief but its finding was without prejudice to the city's right to enforce any local ordinances requiring that the building be kept secure.
Since all parties conceded that the building was burned out and in its present state was unfit for human habitation, the court inquired why the matter should not be dismissed and the city proceed under such ordinances as it might have comparable to those authorized by N.J.S.A. 40:48-2.5.
Counsel for the city requested the opportunity to submit further briefs on the right of the city to proceed under the *395 health statutes. He represented that unless the city could compel the owners of burned-out structures to bear the cost of demolition, the funds available to the city for such work would mean, that little could be done to catch up with the problem. The request was granted because the question is of importance to other urban municipalities. Counsel for the city and counsel for Rogers have submitted supplemental briefs.
The Supreme Court in Alpine Borough v. Brewster, 7 N.J. 42 (1951), held that the use of an injunction to compel compliance with zoning ordinances was a civil remedy which the legislature could authorize without denying individual defendants rights guaranteed by the New Jersey Constitution. It was the creation of a civil remedy.
... [C]ommon nuisances are a species of offenses against "the public order and economical regimen of the state; being either the doing of a thing to the annoyance of all the king's subjects, or the neglecting to do a thing which the common good requires." Common nuisances "are such inconvenient or troublesome offenses as annoy the whole community in general, and not merely some particular person, and therefore are indictable only, and not actionable; as it would be unreasonable to multiply suits by giving every man a separate right of action for what damnifies him in common only with the rest of his fellow subjects." 3 Blackstone's Com. p. 216; 4 Ibid. p. 167. See State v. Rodgers, 91 N.J.L. 212 (E. & A. 1917); Board of Health of Weehawken Twp. v. New York Central Railroad Co., 4 N.J. 293 (1950). But the Legislature may enlarge the category. There can be no doubt of the power of the lawgiver to classify and define public nuisances, and thus to modify the common-law classification. [Id. 7 N.J. at 49-50]
........
A public nuisance is remediable on information by the attorney-general. The attorney-general may likewise proceed by a bill in equity; and if an individual has also sustained special damage over and above the public injury, he also may proceed by bill. Bispham's Principles of Equity (10th ed.) section 439. "In equity as in the law court, the attorney-general has the right, in cases where the property of the sovereign or the interest of the public are directly concerned, to institute suit, by what may be called civil information, for their protection." Attorney-General v. Delaware and Bound Brook Railroad Co., 27 N.J. Eq. 631 (E. & A. 1876). See, also, Hutchinson v. Board of Health of the City of Trenton, 39 N.J. Eq. 569 (E. & A. 1885).
But, apart from the foregoing considerations, it was within the competency of the lawgiver to render the injunctive jurisdiction accessible to the local authority for the protection of the public right under zoning regulations against habitual intrusions. [Id. 7 N.J. at 52]
*396 In State ex rel. Pompton Lakes Bd. of Health v. E.I. DuPont de Nemours Powder Co., supra, the court pointed out that a local board of health might abate a nuisance subject to the owner holding it liable for damages if the property was not a nuisance in fact, but that under the predecessor of N.J.S.A. 26:3-56, the local board could proceed in an equitable action with the protection of the court. It also stated that "[t]he Health acts expressly confer the jurisdiction for injunction and provide for expediting the final hearing where the emergency demands it. But under these acts, the nuisance must be a nuisance hazardous to the public health...." 79 N.J. Eq. at 34. See, also, Ajamian v. North Bergen Tp., 103 N.J. Super. 61 (Law Div. 1968), aff'd 107 N.J. Super. 175 (App.Div. 1969).
The court concludes that, based on the pleadings herein, the city has shown no basis for an injunction except under the provisions of N.J.S.A. 26:3-56 and has failed to establish by proof that there is a present hazard or potential hazard to health within the meaning of that act. As stated by the Supreme Court in Alpine Borough v. Brewster, supra, at common law the right to abate a public nuisance by equitable action rested in the Attorney General. In limited areas, the Legislature has extended such power to local authorities.
Although counsel for Rogers urged that he could not find that the city had adopted an ordinance under N.J.S.A. 40:48-2.5, and counsel for the city did not refer to it in its brief, the city has adopted such an ordinance. At the time city adopted its Revised Ordinances, in 1967, par. 23 of § 4 of the adopting ordinance saved from repeal:
... an ordinance relating to the Repair, Closing and Demolition of Buildings Unfit for Human Habitation or Occupancy or Use; Providing for Remedies and Procedures In Connection Therewith and Providing Penalties For The Violation Thereof ... adopted March on March 3, 1965.
The city also adopted as its building code at that time the BOCA Code, including its provisions pertaining to structures which become unsafe after the adoption of the code. See Newark Rev. Ord. (Appendix), 7:122.0, "Dangerous Structures." *397 The language of 7:122.7 and 7:119.2 suggests that there are circumstances where it was intended that the real property would not only be subject to a lien but that the owner might be personally liable for such costs.
The Legislature authorized the adoption of a Uniform Construction Code by L. 1975, c. 217; N.J.S.A. 52:27D-119. The Commissioner of Community Affairs adopted such a code and it is found in N.J.A.C. 5:23-1.1 et seq. The enforcement provisions are found in N.J.A.C. 5:23-2.9, and subparagraph (d) covers unsafe structures.
Section 1 states:
........
(ii) Notice of unsafe structure: If an unsafe or unsanitary condition is found in a building or structure, the construction official shall serve a written notice describing the building or structure deemed unsafe and specifying the required repairs or improvements to be made to render the building or structure safe and secure, or requiring the unsafe building or structure or portion thereof to be vacated or demolished within a stipulated time. Such notice shall require the person thus notified to immediately declare to the construction official his acceptance or rejection of the terms of the order. Such person may seek review before the Construction Board of Appeals within 10 business days of receipt of the notice;
........
(v) Upon refusal or neglect of the person served with an unsafe notice to comply with the requirements of the order to abate the unsafe condition, the construction official shall, in addition to any other remedies herein provided, forward the matter to the legal counsel of the jurisdiction for an action to compel compliance.
2. Emergency measures:
........
(ii) Temporary safeguards: When, in the opinion of the construction official, there is actual and immediate danger of collapse or failure of a building or structure or any part thereof which would endanger life, he shall cause the necessary work to be done to render such building or structure or part thereof temporarily safe, whether or not the legal procedure herein described has been instituted;
........
(iv) Emergency repairs: For the purposes of this section, the construction official shall employ the necessary labor and materials to perform the required work as expeditiously as possible;

*398 (v) Costs of emergency repairs: Costs incurred in the performance of emergency work shall be paid from the treasury of the jurisdiction on certificate of the construction official; and the legal authority of the jurisdiction shall institute appropriate action against the owner of the premises for the recovery of such costs.
The court notes that there is a separate section of the statute that authorizes penalties. N.J.S.A. 52:27D-138.
The history and purposes of the ordinances authorized by N.J.S.A. 40:48-2.5 et seq. for dealing with buildings unfit for human habitation or occupancy are reviewed in Ajamian v. North Bergen Tp., supra. The recent action of the Legislature in authorizing the adoption of the BOCA Code as part of the State Uniform Construction Code, including the provisions for demolition of unsafe structures shows that the Legislature has and is giving consideration to the problems created by such structures.
N.J.S.A. 40:48-2.5(f) provides that the net cost to a municipality for demolishing a building shall be certified and filed as a municipal lien with tax liens. There is no provision for personal liability. L. 1978, c. 184, as amended by L. 1979, c. 369. N.J.S.A. 17:36-9 provides that where claims on fire policies in excess of $2,500 are to be paid for fire losses in municipalities which have adopted implementing ordinances, no payment can be made until all municipal liens are satisfied. The effect of this law is to extend the resources from which municipalities can be paid from the real property to the proceeds of fire insurance policies.
When the Legislature has intended that there be personal liability, it has so stated. See N.J.S.A. 26:3-55.
Based on a review of those laws, this court concludes that the Legislature intended structures, such as were demonstrated to exist in this case, to be treated in the manner outlined in those laws and not in a summary action in the Chancery Division with personal liability imposed upon the owner for the costs of abatement.
*399 The Legislature has preserved the power of municipalities to define and declare nuisances and to cause their removal and abatement by summary proceedings or otherwise. N.J.S.A. 40:48-2.5(f). But if a municipality is to move by action in equity for an injunction to abatement a nuisance, it must prove the existence of a nuisance. In this case, based on the evidence presented, the court concluded that there was not a public nuisance.
The court notes that N.J.S.A. 52:27D-139 provides that all "construction regulations," whether adopted by the State or a municipality, shall be deemed repealed and superseded when appropriate regulations are adopted under new law. The penalty provision, N.J.S.A. 52:27D-139, does not expressly provide for a lien against property for the net cost to a municipality for demolition of a structure determined to be unsafe. The court has set forth above the sections of the regulations which its research has found on remedial action a municipality may take to have an owner correct an unsafe structure. There is no reference to a municipal lien in said regulations.
The issue of what remedies the Attorney General, the Commissioner of Community Affairs, or local municipalities may urge they have under the State Uniform Construction Code and implementing regulations to enforce orders as to structures found to be unsafe after the procedures therein have been followed, is not now before this court. Accordingly, the court makes no comment as to them except to point out that some change may have occurred which should be considered by responsible officials, who may want either further action by the Legislature or further regulations.
The court concludes that the order to show cause of the city should be discharged without prejudice to the city's right to proceed under its own ordinances and applicable statutes. The counterclaim has been decided in a letter opinion. No costs.