24 N.J. Super. 171 (1952)
93 A.2d 781
CHARLES T. MORRIS, PLAINTIFF-APPELLANT,
v.
BOROUGH OF HALEDON, HERBERT POTTS AND J. HENRY VITZ TRADING AS PAINTEX BODY WORKS, HERRMANN SHEET METAL WORKS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, ARTHUR SEIBER, LAWRENCE FREUNDENTHAL, AND NEIL STRUYK, BUILDING INSPECTOR OF THE BOROUGH OF NORTH HALEDON, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 17, 1952.
Decided December 31, 1952.
*173 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. Samuel A. Wiener argued the cause for plaintiff-appellant.
Mr. Edward G. Weiss argued the cause for defendants-respondents (Mr. Joseph J. DeLuccia on the brief).
The opinion of the court was delivered by GOLDMANN, J.A.D.
Charles T. Morris and Everett Weaver instituted an action in the Chancery Division seeking to enjoin defendants from violating the provisions of the zoning ordinance of the Borough of North Haledon "by reason of the nuisances created by all of the * * * defendants as a result of which the plaintiffs have, are and will suffer special injury and damage other than as members of the general public." Weaver subsequently withdrew as a party plaintiff, having moved to another municipality. Defendant Seiber was by stipulation eliminated as a party defendant. The second count of the complaint involving defendant Borough of Haledon was abandoned and accordingly dismissed. The third count involving defendant Neil Struyk, Building Inspector of the Borough of North Haledon, was also dismissed because cognizable only in the Law Division. The Chancery Division entered final judgment denying the injunction sought against the remaining defendants *174 under the first count of the complaint. Plaintiff appeals.
The Chancery Division held that
"An individual suitor may not secure an injunction simply by proving a violation of a zoning ordinance. He still must show that the violation is a nuisance which has resulted in special damage to him."
It concluded that most of the things of which plaintiff complained were "noises incidental to the normal operations of the several businesses" of defendants. Not being excessive they furnished no ground for the court's intervention. However, the court declared that it would enjoin defendants' operations to the extent that they interfered with plaintiff's nightly rest. It therefore restrained defendants from carrying on the operation of their respective businesses after 7 P.M. It also enjoined them from burning rubbish, so as not to inconvenience plaintiff by smoke, soot and odors. In view of its conclusions, the Chancery Division did not pass on the validity of the zoning ordinance of North Haledon or its effect upon lands owned within that municipality by the Borough of Haledon. Morris v. Borough of Haledon, 20 N.J. Super. 433 (Ch. Div. 1952).
Defendants' businesses are located on a tract owned by the Borough of Haledon in North Haledon for reservoir purposes. Originally there were five buildings on this tract which the National Youth Administration used from 1939 until the Fall of 1942 as a school to instruct and train boys in carpentry, painting, plumbing, welding and other trades. Thereafter the Army Signal Corps took over for a brief period. Later part of the property was used by a company making gun turrets and gun mounts.
Freudenthal rented two of the buildings for his woodworking business in 1943. When one burned down in 1948 he transferred his operation to the other. Defendants Potts and Vitz, trading as Paintex Body Works, began their truck repair and painting operations in one of the buildings in February 1946. Herrmann Sheet Metal Works moved into its building in July 1947.
*175 The Borough of North Haledon adopted its zoning ordinance August 13, 1941. The tract in question was placed in an "A" residence zone, which is restricted to one-family, detached dwellings. Plaintiff purchased a property in that zone in May 1947. It was then a summer cottage, now converted into a year-'round residence. The dwelling abuts the Haledon tract and is 120 feet from the Freudenthal shop, 150 feet from the Herrmann plant and 275 feet from the Paintex building. The disturbances of which plaintiff complains began in the summer of 1948. The Freudenthal operations result in loud noises from electric saws and shapers, in hammering and banging, and the odor of paints and lacquers. At Paintex there are pounding noises, the hissing sound of air hoses, the roaring of steam from the steam jetty, and the racing of motor trucks. From the Herrmann plant comes the loud sound of the electric sanding and welding equipment, hammering and banging on metal, and the vibration of revolving heavy tubs. At night the welding work is accompanied by blinding flashes. Defendants have operated their businesses as early as 6 A.M. and sometimes until late in the evening, and on Sundays and holidays. All of them at one time or another burned rubbish and debris, resulting in noisome odors, soot and smoke.
Plaintiff claims that all this noise, commotion, vibration and smoke disrupts normal living and destroys the peace and comfort of his home. His family cannot carry on a conversation or listen to the radio. Odors and soot come in at the windows. Sleep is disturbed. Plaintiff's wife has suffered splitting headaches.
On the other hand, defendants claim that the noise is only that normally associated with the operation of their businesses. They deny working in the early morning, at night or on Sundays. They say they discontinued burning rubbish a year and a half before the hearing.
The testimony, as is usually the case in these matters, is in strong conflict.
*176 Plaintiff on five different occasions appeared before the borough council to protest against the violation of the local zoning ordinance and the nuisance created by defendants. In December 1949 a petition containing 28 signatures of residents in and about the affected area was presented to the council, seeking relief from prevailing conditions.
The Borough of Haledon, owner of the premises occupied by defendants, has done nothing to improve or eliminate the conditions complained of. Although the tract was zoned for residential purposes, the borough was willing, as its clerk readily admitted, to rent its buildings to any one who would pay the price. The result was an industrial blight upon a once rural and peaceful residential community.
The Borough of North Haledon has been scarcely more helpful than its neighbor. Despite the receipt of repeated complaints, its governing body met or got in touch but once with that of the Borough of Haledon to request that its tenants eliminate the conditions which were the subject of protest. Nothing was done. Plaintiff and his then neighbor, Weaver, filed a complaint against Potts, Vitz, Freudenthal and Herrmann in the First Criminal Judicial District Court of Passaic County, for violation of the North Haledon zoning ordinance. The complaint was dimissed on defendants' motion, the court holding that only the North Haledon building inspector could, under the terms of the ordinance, enforce its provisions. The building inspector, however, took no action. It was not until a proceeding was instituted against him in the Law Division that he filed his complaint in the Municipal Court of North Haledon. He testified before the municipal magistrate that he made the complaint because "certainly there is a violation," and that he had come to that conclusion "after these complaints were made by someone else" and after investigating "a little more thoroughly." The municipal magistrate dismissed the complaint.
In April 1950 plaintiff was obliged to retain his present attorney. One of his first acts was to call the attention of Struyk, the building inspector, to the fact that defendants *177 were operating without the certificates of occupancy required by the zoning ordinance, stating that the premises involved complied with the ordinance provisions. Struyk replied on May 1 that he was unable to find any record of a certificate of occupancy having been issued to any of the defendants. He said that in his judgment "the use made of these properties is lawful as a non-conforming use, and the named parties have had my oral approval to operate." Three days later, May 4, 1950, Struyk on the advice of borough counsel issued a certificate of occupancy to each of the three defendants.
Aside from the single municipal court proceeding, the Borough of North Haledon has brought no proceeding to enforce its zoning ordinance. It has not taken advantage of the provisions of N.J.S.A. 40:55-47 to restrain, correct or abate defendants' violations. It has, in effect, left plaintiff to seek his own salvation in the courts instead of zealously protecting and preserving its zoning scheme. Plaintiff was finally obliged to institute this action for an injunction in September 1950.
We agree with the conclusion of the Chancery Division judge that defendants' business operations violate the zoning ordinance of the Borough of North Haledon. They are not, as contended, continuations of a nonconforming use represented by the vocational school once maintained by the National Youth Administration. The training courses provided by the federal agency from 1939 to 1942 were an entirely different kind of activity, noncommercial in nature and having as their purpose teaching useful mechanical arts to youth. Following the closing of the school and the temporary use of the premises by the Army Signal Corps and a small war industry, there was a brief intervening period before the first of the defendants, Freudenthal, rented two buildings for his woodworking shop. Defendants' industrial operations have a profit motive and cannot be said to be, both by reason of their character and the cessation of the National *178 Youth Administration activity, a continuation of a non-conforming use.
Plaintiff is not in laches. He has since 1948 done everything he could to stop defendants' continuing violations of the North Haledon zoning ordinance. He is frustrated by municipal inaction, so that in the end he is obliged to seek relief in the courts through individual action.
The fact that the North Haledon building inspector gave his oral approval to defendants' operations and later, in the circumstances above related, issued certificates of occupancy, would not warrant the denial of relief to plaintiff. The building inspector had no authority to authorize a use in a residential district prohibited by the zoning ordinance. Frizen v. Poppy, 17 N.J. Super. 390, 394 (Ch. Div. 1952).
The Chancery Division has jurisdiction to grant injunctive relief against a violation of a municipal zoning ordinance on the complaint of an individual, where special damage is shown to have been sustained by him as a result of such violation. As was said in the Frizen case, at page 393:
"To maintain the integrity of a residential area against encroachment by an enterprise not within the terms of the zoning ordinance, an owner suffering special injuries may maintain a suit to enjoin such violation. Stokes v. Jenkins, 107 N.J. Eq. 318 (Ch. 1930); Yanow v. Seven Oaks Park Inc., 15 N.J. Super. 73 (Ch. Div. 1951)."
In Mayor, etc., of Alpine Borough v. Brewster, 7 N.J. 42 (1951), it was held that a municipal corporation may likewise maintain such an action. The court in that case considered R.S. 40:55-47, as amended by L. 1949, c. 242, which authorizes the governing body of a municipality, where any building, structure or land is used in violation of the local zoning ordinance, in addition to other remedies, to institute "any appropriate action or proceedings to prevent such unlawful" structure or use, "to restrain, correct or abate such violation, to prevent the occupancy of said building, structure or land, or to prevent any illegal act, conduct, business or use in or about such premises."
*179 After defining public or common nuisances, Justice Heher stated that there could be no doubt about the power of the Legislature "to classify and define public nuisances, and thus to modify the common-law classification." He said (at page 50):
"* * * Anything that unduly interferes with the exercise of the common right may be declared a nuisance and rendered abatable as such and otherwise remediable. * * *"
He held that the statutory grant of the injunctive power to the local authority does not run counter to constitutional limitations, and that the jurisdictional infirmity found in Hedden v. Hand, 90 N.J. Eq. 583 (E. & A. 1919), was not present in N.J.S.A. 40:55-47. The remedial process of injunction "is a civil remedy not punitive in essence; * * *. It is a means of serving the common interest in matters related to the social well-being, order and economy of the community." He noted that in Hedden v. Hand it was conceded that the former Court of Chancery had jurisdiction to afford relief against an indictable public nuisance at the suit of an individual who had suffered special injury beyond that inflicted on the public at large.
The theory of the Brewster case, based upon the legislative view implicit in N.J.S.A. 40:55-47, is that the violation of a zoning ordinance is a public or common nuisance. This being so, we hold that an individual plaintiff may maintain an action to restrain the violation of a municipal zoning ordinance upon a showing that he has sustained special damage by reason of such violation. In doing so, we adopt the reasoning of the court in Stokes v. Jenkins, 107 N.J. Eq. 318 (Ch. 1930), restated in Yanow v. Seven Oaks Park, Inc., 15 N.J. Super. 73 (Ch. Div. 1951). The authorities elsewhere are in accord. 4 Pomeroy, Equity Jurisprudence (5th ed. 1941), § 1349, p. 953; 39 Am. Jur., Nuisances, § 124, p. 378.
There can be no question that plaintiff has sustained special and particular damage, distinct from that suffered *180 by him in common with the community at large. The injury is real and such that the legal remedy of damages would not be adequate. The language of Vice-Chancellor Fielder in Stokes v. Jenkins, 107 N.J. Eq. 318, 322 (Ch. 1930) is appropriate:
"* * * Because of the location of complainants' lot with reference to the violation, the complainants suffer special damage, greater than any other individual member of the public. The situation created by defendant's violation of the ordinance specially affects the complainants personally and must cause depreciation in value of their property. Infliction on the defendant of the penalty prescribed by the ordinance will bring no relief to the complainants and since the municipality has instituted no proceeding against the defendant to enforce this, or any other remedy, I conclude that the complainants are entitled to relief from this court by injunction, to place them in the enjoyment of the benefits, peculiar to themselves and their property, which the zoning ordinance in question conferred on them."
And see 38 Am. Jur., Nuisances, § 126, p. 386.
The judgment is reversed and the record remanded for proceedings in the Chancery Division not inconsistent with this opinion.