69 N.J. Super. 436 (1961)
174 A.2d 385
STELLA PROTOKOWICZ ET AL., PLAINTIFFS,
v.
FRANK LESOFSKI ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided October 13, 1961.
*438 Messrs. Feinberg, Dee & Feinberg, attorneys for the plaintiffs (Mr. Richard J. Feinberg, appearing).
Mr. J. Arnold Bressler, attorney for the defendants (Mr. Louis Chodash, appearing).
COLLESTER, J.S.C.
The plaintiffs bring this action seeking to enjoin an alleged nuisance, an alleged violation of the zoning ordinance, and to recover money damages.
The plaintiffs are either property owners or tenants who reside in close proximity to the property owned by the defendants at 113 Avenue E, Bayonne, New Jersey. Both plaintiffs and defendants reside in a district which is zoned by the municipality as a residential zone. It is conceded that when the original zoning ordinance was adopted in May 1945 the defendants were operating a coal business at their premises, and as a result of the adoption of said zoning ordinance the operation of the business became a nonconforming use which could be continued in operation as of right, pursuant to R.S. 40:55-48. The defendants claim that their original business was not only for the sale, temporary storage and delivery of coal, but also oil. They further contend that in addition to the coal and oil business they also conducted a trucking business on the premises prior and subsequent to the adoption of the zoning ordinance in 1945. Plaintiffs dispute this contention.
It is undisputed, however, that since at least the summer of 1960 defendants have ceased to operate their coal and *439 oil business and the business now being conducted is entirely devoted to trucking.
The plaintiffs in this action seek injunctive relief, contending that the operation of such business constitutes a nuisance which unreasonably interferes with and causes injury to the health, normal private comforts and safety of the plaintiffs. They further contend that the business operations of the defendants constitute a violation of the requirements of the municipal zoning ordinance in that they have expanded and enlarged their business beyond that legally authorized under their nonconforming use which was established by law in 1945. They also seek damages which allegedly resulted from the depreciation of their properties.
The defendants deny that their business operations constitute a nuisance warranting injunctive action. They claim that when the 1945 ordinance was adopted they were operating a coal and oil business together with a trucking business; that within the last two years they have ceased to operate the coal and oil business but are now solely engaged in the trucking business which was their right under the nonconforming use provided for under the statute. They deny that plaintiffs have any legal claim for damages.
Defendants also contend that plaintiffs' action is barred by reason of laches and that the issue is res adjudicata by reason of a decision rendered by the Bayonne Municipal Court in 1959.
Upon a full consideration of all the evidence presented, this court makes the following finding of facts:
The defendants, Frank Lesofski and Anna Lesofski, were engaged in the coal, oil and trucking business when they purchased their property located at 111-113 Avenue E in Bayonne in 1938. When the municipality enacted its original zoning ordinance in 1945 the defendants, under the law, became possessed of a nonconforming use to operate said business despite the fact that the surrounding properties on the west side of Avenue E were zoned for residential purposes known as an "A" residential zone.
*440 The evidence shows that the coal business operated by defendants at the site consisted of the transportation by truck of coal from the mines of Pennsylvania to defendants' yard, where it was stockpiled. A fence enclosed the yard of the defendants. At first this coal was transferred by shoveling into bags, which were then delivered by truck to defendants' customers. Shortly thereafter a gasoline conveyor was set up in defendants' yard to eliminate moving of the coal by hand. Trucks used in the coal business were powered by gasoline.
The trucks operated by defendants were one delivery truck, one trailer truck used to transport coal from the mines, one oil tank truck, and a fourth truck which was not operated in the business but served as a reservoir for auto parts.
I am also satisfied from the evidence presented that a part of the defendants' business in 1945 and thereafter was a trucking business  some undoubtedly undertaken by the trailer on its way west to the mines in Pennsylvania.
The evidence shows that as time passed by the coal business decreased and the trucking business increased. The coal business ceased entirely after March 1960. On the other hand, the trucking business increased to a point where defendants' primary, if not sole, work today is the transportation of fill, earth and the like for construction projects. Defendants' premises today serve as a depot for the storage and repair of their trucks.
The evidence shows that in 1954 the defendants purchased for use in their trucking business a diesel engine powered dump truck, and that in 1957 a second diesel-powered truck was acquired.
It is important to consider the evidence showing the location and size of the property on which defendants' business is operated. It consists of a two-family residential dwelling inhabited by two families, a store front, and a vacant yard in the area between defendants' property and that owned by the plaintiff, Protokowicz, at the rear. In the driveway running from the rear yard to Avenue E, *441 immediately adjacent to the plaintiff Wortnowski's property, is a large scale used formerly to weigh trucks of coal. The scale is no longer used since defendants have terminated their coal business, and defendants have indicated they contemplate selling and removing the scale. In the rear yard of defendants the coal pile formerly existed extending immediately adjacent to the property of plaintiff Protokowicz. The coal conveyor still remains in the back yard but is no longer operated. The defendants' property has a frontage of 50 feet on Avenue E and a depth of approximately 100 feet.
The yard is now used by defendants for the storage of trucks. Until recently defendants stored two large diesel-powered dump trucks, a trailer truck and a smaller truck in said yard. The smallest truck has now been sold.
It is quite evident that when defendants substituted diesel-powered trucks for gasoline powered trucks the adjoining property owners began to complain.
The evidence presented to this court shows that the noise of truck motors greatly increased, since diesel motors give off a much greater, nerve-shattering noise than gasoline trucks. This was further aggravated in 1957 when defendants acquired their second diesel truck. An air starter was used in connection therewith until December 1960, when it was replaced by an electric starter.
The evidence further shows that defendants operate these diesel trucks at very early morning hours and late evening hours. The evidence shows that defendants' ordinary operation is to start these trucks' motors before 6 A.M., and that often these trucks do not return until late at night. Once a diesel motor is started it is necessary for some minutes that the motor be run before the truck can be driven away in order that sufficient air can be compressed for the air brakes.
It is also apparent that the weighing scale immediately adjacent to the Wortnowski's property is so constructed or *442 so worn from usage that when the heavy diesel trucks drive over it a loud rumbling noise and vibration results.
In addition to the noise created and aggravated by the diesel-motored trucks it is also clear that noxious fumes and smoke are given off  fumes which fill the air and seep into the homes of the plaintiffs. Evidence shows that these fumes are such that they cause eyes to water, sore throats, headaches and nausea on the part of plaintiffs.
There also is evidence that defendants are called upon to change truck tires late at night, early in the morning, or on Sundays. It is undisputed that this operation is one creating a substantial amount of noise due to the fact that metal frames sealing in such tires must be hammered off.
In summary, the evidence is clear and convincing beyond all doubt that the plaintiffs have been awakened regularly both early in the morning and late at night by the noise of the diesel motors; that the rumble of heavy trucks over the scale causes noise and vibration; that acrid, noxious fumes from the diesel motors seep into the homes of the plaintiffs who adjoin defendants' premises, and that such business operations cause nausea, irritated throats, headaches, eyes to water, and inability to sleep during normal sleeping hours.
The first question presented is whether or not the business operation of the defendants is a violation of the zoning ordinance in that it is an enlargement or extension of a nonconforming use.
It is the rule in this State that insofar as a private litigant is concerned, injunctive relief will not be granted simply by proving a violation of a zoning ordinance. He must still show that the violation of such an ordinance is a nuisance which resulted in damage to him. Morris v. Borough of Haledon, 20 N.J. Super. 433 (Ch. Div. 1952).
This court is satisfied that at the time of adoption of the original zoning ordinance by the municipality in 1945, the defendants were engaged in the trucking business as well as the coal and oil business. While it is conceded *443 that defendants have terminated their coal and oil business and have increased their trucking business, an increase in volume of business alone is not ordinarily considered an expansion of a nonconforming use. Hantman v. Randolph Twp., 58 N.J. Super. 127 (App. Div. 1959). Nor does the fact that defendants' trucks are now longer and larger than formerly used constitute an unlawful extension of a nonconforming use. Kramer v. Montclair, 33 N.J. Super. 16 (App. Div. 1954).
I do not find that the defendants have violated the zoning ordinance by means of an extension or enlargement of their nonconforming use.
The next issue for consideration is whether or not the operation of diesel-motored trucks on defendants' premises constitutes a private nuisance which can be enjoined.
Certainly one cannot argue that the substitution of a gasoline-powered motor in a truck by a diesel engine is a nuisance per se. We cannot shut our eyes to scientific progress, even though it may add somewhat to our individual discomfort. Undoubtedly, the noise of a radio or television set or the explosion of a gasoline-powered engine may, at one time, have been considered a nuisance. Today such interference with our enjoyment of peace and quiet is accepted as a normal, minor discomfort which arises with the passage of time and corresponding scientific progress. So here, a diesel motor is part of our scientific development, and ordinarily we must adjust our living habits to noise and fumes of such a motor under ordinary circumstances.
However, in determining whether or not a diesel engine operation may be a private nuisance, we must look to the circumstances of such usage. We must always balance the equities in the situation involved.
In the case sub judice the house and yard of the defendants are immediately adjacent to the properties of the plaintiffs, Wortnowski and Protokowicz, people of normal sensitivities. The evidence clearly shows that in the close quarters between these properties the defendants operate these diesel-motored *444 trucks which give forth a loud, nerve-shattering noise. When such motors are started they must be run for several minutes to generate air pressure for brakes before the trucks can be removed from the yard. The use of the air starter for a period of about four years increased the noises. Acrid, noxious fumes are produced which seep through into the homes of the plaintiffs even if all windows are closed. These fumes adversely affect all persons in the immediate area, causing eye-watering, sore throats, headaches and frequently nausea. These trucks have normally been operated at the early morning hours of 5:45 to 6 A.M. and frequently late at night after plaintiffs have retired. The noise is such as to make sleep impossible.
In addition to the foregoing conditions, the evidence shows that each time one of the heavy, diesel-motored trucks rolls across the weighing scale located in the driveway adjacent to Wortnowski's property, a loud, rumbling noise causing vibrations in the adjoining house results. A further cause for noise is the frequent necessity to change truck tires which requires hammering.
It is obvious that a continuation of the living conditions to which the plaintiffs are subjected is clearly intolerable.
In Sans v. Ramsey Golf & Country Club, 29 N.J. 438 (1959) it is stated at pp. 448-449:
"The essence of a private nuisance is an unreasonable interference with the use and enjoyment of land. * * * Litigation of this type usually deals with the conflicting interests of property owners and the question of the reasonableness of the defendant's mode of use of his land. The process of adjudication requires recognition of the reciprocal right of each owner to reasonable use, and a balancing of conflicting interests. The utility of the defendant's conduct must be weighed against the quantum of harm to the plaintiff. The question is not simply whether a person is annoyed or disturbed, but whether the annoyance or disturbance arises from an unreasonable use of the neighbor's land or operation of his business. Prosser, Torts (2d ed. 1955) p. 410. * * *"
While the noise and noxious fumes of the diesel-motored trucks which occur here cause a condition which in another *445 location would be harmless (such as in a closed structure not located adjacent to a residential property), the operation conducted by the defendants in the close proximity to residential property creates a condition which results in material injury to the health, ordinary comfort and normal living habits of the plaintiffs. It is clearly an unreasonable use of defendants' property.
As to the defense of laches raised by the defendants, the evidence shows that since 1954, when the first diesel motor truck was purchased by defendants, and more so after the second diesel was acquired in 1957, numerous complaints as to the mode of operation of defendants' business have been made to the police. In 1959 an action was initiated in the municipal court alleging that defendants were violating the zoning ordinance.
A nuisance, originally slight, but becoming increasingly more aggravating, does not estop persons affected thereby, through laches, from maintaining an action for injunctive relief. Melucci v. Eagan, 124 N.J. Eq. 241 (E. & A. 1938); see also Rowland v. N.Y. Stable Manure Co., 88 N.J. Eq. 168 (Ch. 1917), Board of Health of North Brunswick Twp. v. Lederer, 52 N.J. Eq. 675 (Ch. 1894).
I find no bar to the plaintiffs' action by reason of the equitable defense of laches.
Nor is there any merit to the defense urged by defendants that a decision made on a complaint before the Bayonne Municipal Court in 1959, charging a violation of the zoning ordinance by the defendants and which resulted in a decision favorable to the defendants, renders the issue res adjudicata. Different issues were involved in such action.
Furthermore, since this court has also found no violation of the zoning ordinance by the defendants, the municipal court action is immaterial.
I find no violation of the zoning ordinance on the part of the defendants. They are entitled to use  as heretofore  their property for the storage of trucks in their trucking business.
*446 However, I do find that the use of diesel-motored trucks, with all of the resulting blasts of noise, noxious fumes  which I have heretofore described  within the close confines of defendants' yard is a nuisance which must be abated.
Since the plaintiffs were well aware of the fact that defendants were operating a coal business and a trucking business when they moved to the area  or necessarily were bound by the legal effect of the nonconforming use in 1945  and I specifically refer to the plaintiff Protokowicz  I can see no basis for any claim for money damages on the ground of depreciation in value of their respective properties. Accordingly, I find that no recovery can be allowed for money damages.
However, as to injunctive relief, I shall grant the same.
1. While defendants have the right to use their property as a nonconforming use in their trucking business, the coal and oil business having been abandoned, I will restrain the use or storage of diesel-motored trucks on defendants' property in connection with said trucking business.
2. Since it is apparent that defendants have been operating their business at hours which affect the health, comfort and welfare of the plaintiffs, I will restrain the operation of the trucking business to the hours of 6 A.M. to 8 P.M. daily, and bar all business activity on Sundays.
An appropriate judgment in conformance with this opinion may be presented pursuant to R.R. 4:55-1.