72 N.J. Super. 184 (1962)
178 A.2d 92
LOUIS WEBER, ET AL., PLAINTIFFS,
v.
JOSEPH PIERETTI, JR. AND MARIE PIERETTI, INDIVIDUALLY AND T/A BROOKDALE BEVERAGE CO., MAYOR AND COUNCIL OF THE TOWN OF BLOOMFIELD, AND ARTHUR J. RAAB, BUILDING INSPECTOR OF THE TOWN OF BLOOMFIELD, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 22, 1962.
*189 Mr. David A. Rappeport for plaintiffs.
*190 Messrs. Philip Lindeman, II and Bernard Hellring for defendants Joseph and Marie Pieretti (Messrs. Philip Lindeman, II and Norman Bruck, on the brief; Messrs. Hellring, Lindeman & Lieberman, attorneys).
Mr. Joseph D. Lintott for the Town of Bloomfield.
MINTZ, J.S.C.
The plaintiffs are one-family residential property owners who reside in proximity to the premises of the Brookdale Beverage Co. ("Brookdale"), a substantial concern engaged in the manufacture and bottling of soft drink beverages at 218-228 Sylvan Road, Bloomfield, N.J. Defendant Joseph Pieretti, Jr. first went into possession of the premises, referred to as the Herbstreith tract, about 1927. This tract has a frontage of approximately 72 1/2 feet on the north side of Sylvan Road and a depth of about 780 feet. Mr. and Mrs. Pieretti reside in the dwelling fronting on Sylvan Road. The bottling plant and accessory uses thereto are situate on this lot to the rear of the dwelling. He commenced the business in a barn-like structure in 1928 and acquired title to this tract on October 30, 1935. He and his wife acquired title on October 25, 1943 to the adjoining easterly tract, referred to as the Ochsner tract, which also has a frontage of about 72 1/2 feet on Sylvan Road and a depth of about 780 feet. Thus, the property in question has a total frontage on Sylvan Road of approximately 145 feet and a depth of about 780 feet. The Ochsner tract is presently used as part of the Brookdale driveway, for the parking of vehicles and other uses incidental to the operation of the bottling plant. Adjoining the Herbstreith tract on the west is a plot of similar dimension referred to as the Patterson tract. A dwelling on the Patterson tract fronts on Sylvan Road and a trucking business is in operation to the rear of the same. Brookdale uses the Patterson driveway and a refuse pit as well as some storage sheds on that tract.
Brookdale was operating its business on December 15, 1930 when the Town of Bloomfield adopted a zoning ordinance which placed the subject property in the "Small Volume Residential *191 Zone A." Since that date the Brookdale operations have been conducted in an attractive single-family residential zone. A recently constructed public school is less than a block away from Brookdale's premises.
Plaintiffs contend that over the years Brookdale has vastly and unlawfully extended its valid nonconforming use, that the increased operation with the attendant noises and heavy truck traffic constitutes a nuisance, and that the municipal authorities have failed to enforce the zoning ordinance. They seek to enjoin Brookdale from violating the zoning ordinance, in effect to "roll back" the Brookdale use to the use it enjoyed as of December 15, 1930, and to abate the nuisance. The proceeding against the municipal authorities is an action in lieu of prerogative writs to require them to enforce the provisions of the zoning ordinance.
The defendants Pieretti contend that the Brookdale uses today are substantially the same as of December 15, 1930; that the only addition to the building was one made to the front as a result of a valid building permit issued in 1941. They concede that the business, which is both wholesale and retail, has increased tremendously, but assert that with modern equipment the use has merely been intensified, not enlarged. Furthermore, they contend plaintiffs have not shown any special damages which entitle them to bring this action, and in any event they are barred from relief because of laches and estoppel.
In 1944 defendants Pieretti applied for a variance to build an addition to the bottling plant. The application was denied and the denial affirmed. Pieretti v. Johnson, 132 N.J.L. 576 (Sup. Ct. 1945). Again, in June 1958, they applied for a variance to add a proposed addition on parts of both tracts owned by them. The board of adjustment recommended the variance. The town council rejected the recommendation. The Pierettis instituted an action in lieu of prerogative writ to review the determination of the town council. On appeal the Supreme Court affirmed the action of the town council. Pieretti v. Bloomfield, 35 N.J. 382 (1961).
*192 Brookdale's use of the premises has been the subject of several proceedings in the Bloomfield Municipal Court. A complaint was filed against Joseph Pieretti, Jr. on December 8, 1943 for commencing to erect a structure before obtaining a building permit, and a second complaint for constructing part of a building in violation of the zoning ordinance. He was convicted on the first mentioned complaint, and found not guilty on the second charge. On December 16, 1946 he was adjudged guilty of putting a window in a frame without a permit. On February 14, 1949 five charges were preferred against Joseph Pieretti, Jr., one for violation of the zoning ordinance and four for violations of the building code. He was found guilty on the zoning charge, one charge for violation of the building code was dismissed, and he was adjudged guilty on the remaining three charges for violation of the building code. Apparently the charges pertained to erection of three tents on the subject tracts used for storage purposes. As a result of the convictions the tents were removed.
Plaintiffs urge that Pieretti v. Bloomfield, supra, has affirmatively determined that Brookdale has unlawfully expanded its nonconforming use and that the doctrine of collateral estoppel by judgment applies. Defendants assert that such finding is mere dictum. The doctrine of collateral estoppel is restricted to matters or facts directly in issue and does not extend to any matter which came collaterally in question. Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action. Mazzilli v. Accident, &c., Casualty Ins. Co. etc., 26 N.J. 307, 315 (1958); Restatement, Judgments, § 68 (1942).
In Pieretti v. Bloomfield, supra, the validity of the nonconforming use was projected as a legal issue in the pretrial order. Testimony on this issue was presented before the board of adjustment and was included in the record before the Supreme Court. Some of the property owners who intervened *193 as defendants are also plaintiffs in this action. The court held that since the Pierettis were denied a variance in 1944, that decision (Pieretti v. Johnson, supra) was res adjudicata as to their subsequent application for a variance in 1958, and furthermore, no undue hardship or "special reason" was shown so as to justify the granting of a variance. The court said at page 389 of 35 N.J.:
"Moreover, if there be any exceptional and undue hardship upon the plaintiffs, it results from their own acts. They acquired both tracts of land after the zoning ordinance was adopted in 1930 and thus they purchased the land with knowledge that such properties were in a one-family residential zone. In their 1944 case plaintiffs' counsel stated that the second tract had been purchased subject to the zoning ordinance. There is no doubt that there has been an expansion of the plaintiff's business, and it also appears that plaintiffs, without permission or authority, expanded their own non-conforming use. For example, one of the exhibits in evidence shows growth in building area from 1400 square feet in 1937, to 2280 square feet in 1941, to 5,800 square feet in 1944 and finally to 9,300 square feet in 1958. Cf. Black v. Town of Montclair, 34 N.J. 105, 118 (1961).
Plaintiffs testified in 1944 that they were using 6 trucks and were employing 11 people. In 1958 they had 15 trucks and were employing 42 people. One can reasonably conclude that plaintiffs have expanded a non-conforming use without permission and if hardship results, plaintiffs brought it about. We cannot sanction such actions. Mocco v. Job, 56 N.J. Super. 468, 470 (App. Div. 1959)."
It appears that Pieretti v. Bloomfield, supra, determined that the Pierettis, without permission or authority, expanded their own nonconforming use. To this extent the doctrine of collateral estoppel by judgment as to such finding applies in the instant case.
Independent of collateral estoppel, the testimony in the case sub judice abundantly supports the same conclusion. Clearly, title to both tracts was acquired after the adoption of the zoning ordinance with knowledge that the properties were in a one-family residential zone.
When the Pierettis acquired title to the Ochsner tract it was heavily wooded, with dense underbrush. They contend that prior to 1930, although they neither owned nor leased this lot, Brookdale used it with the knowledge of *194 the owner for driveway and storage purposes as well as for parking vehicles in between the trees, and that none of such uses has been enlarged.
Admittedly, about 1954 a large exposed carbonation tank was placed on the Ochsner tract east of the front of the bottling plant, thereby without authority appropriating more of that land for business use. Cf. Struyk v. Samuel Braen's Sons, 17 N.J. Super. 1 (App. Div. 1951), affirmed on opinion 9 N.J. 294 (1952). Mr. Pieretti testified that in 1928 he used the rear of the Ochsner tract for storage purposes and covered his merchandise with a tarpaulin. Presumably the large unsightly trailer bodies now on that tract eventually replaced and vastly increased the former storage facilities, if any, on the Ochsner tract.
Fairway is a street that was cut through in the early 1940's from the north side of Sylvan Road and extends northerly at right angles to Sylvan Road. It is now a nice, completely built-up, one-family residential street. Some of the rear property lines of properties on the west side of Fairway adjoin the easterly side of the Ochsner tract. By letter dated October 26, 1943 (one day after title was acquired to the Ochsner tract) addressed to N.M. Stott, President, The Fairway Association, 24 Fairway, Bloomfield, N.J., Mr. Joseph Pieretti, Jr. expressed his disappointment over the refusal of the members of that association to go along with his contemplated improvements, and that as a result he was required to revise his plans. He wrote in part:
"These plans now compel me to enter a phase of operation which I had hoped would be entirely unnecessary and embraces the cutting down and removal of trees adjoining your property lines, level off with cinders or other substitute and to use such area cleared for the storage and operation of trucks, barrels, bottles, empty cases and other equipment that lends itself suitable for outside storage and operation."
In the course of his testimony before the board of adjustment in 1944 on his application for a variance, Mr. Pieretti *195 stated that he intended to build his home on the Ochsner tract; that he did not intend to use that lot in conjunction with his business on the adjoining property; that he did not intend to use that property for a driveway, stating, "I have a driveway large enough all these years, it will still be large enough." Thus, from the pen and lips of defendant Joseph Pieretti comes the admission that the Ochsner tract was not used for business purposes prior to 1943-1944. His attempt in this proceeding to explain away his earlier testimony in the 1944 proceeding was completely ineffective, particularly in view of the credible testimony clearly establishing the progressive utilization after 1943 of various parts of the Ochsner tract for Brookdale uses.
The burden of proving the existence of a nonconforming use prior to the adoption of the zoning ordinance is upon the party asserting such use. This rule comports with the policy of the law not to favor such uses. Heagen v. Allendale, 42 N.J. Super. 472 (App. Div. 1956). I conclude that defendants have failed to prove any valid nonconforming use of the Ochsner tract prior to the adoption of the zoning ordinance. The credible proof is to the contrary.
Brookdale's business boomed progressively over the years. It grew from a small, family-operated business into a sizeable enterprise. In 1930 they produced 50,000 cases and operated six trucks. Independent jobbers furnished an additional five trucks. In 1960 and 1961 they produced about 1,100,000 cases annually and operated 16 trucks. Independent jobbers in these years supplied annually an additional nine trucks. Presumably Mr. Pieretti was not to be frustrated by his inability to obtain a variance in 1944. His business was bulging, and he resorted to self-help to unauthorizedly expand his prior nonconforming use.
Many photographs were introduced into evidence, as well as a drawing prepared by Mr. Pieretti in 1941 showing the then present structure on the Herbstreith tract with the proposed addition to the front subsequently made. Such evidence, together with the exhibits submitted by defendants *196 to the board of adjustment on their 1944 application for a variance, when compared with the presently existing structure, incontrovertibly show considerable enlargements to the main bottling plant on the Herbstreith tract since 1941.
Apparently between 1941 and 1944 a one-story cinder block addition was added to the northwest portion of the bottling plant, replacing a smaller open shed. A second-story addition was added to the northwesterly side about 1945 or 1946. Open make-shift sheds, detached from the cinder block addition, were sometime after 1944 enclosed, enlarged and incorporated into the main structure and now encroach upon the Patterson tract (upon which Pieretti holds a mortgage and a right of first option to purchase in the event Patterson elects to sell).
In 1944 there were no structures attached to the original most northerly rear wall of the bottling plant, and no "lean-to's" or sheds attached to the easterly wall. Subsequently, aluminum awnings or coverings of some type were projected from the said northerly and easterly walls at about the ceiling level of the first floor (in areas where Mr. Pieretti testified he stored cases and cylinders of gas, which cylinders were ultimately replaced by the large carbonation tank). At a later date sidings were added, resulting in "lean-to's." Some of the coops on the premises were replaced by larger makeshift sheds that presently adjoin a loose cinder block wall constructed by said defendant about midway across his properties. One trailer body used for storage purposes is attached to one of the sheds. Additional trailer bodies are elevated and placed in parallel position adjoining the wall and used for storage purposes. This wall also extends about midway across the Patterson tract, and adjoining same on this tract Brookdale uses structures for storage purposes, which were placed there after 1930 and constitute an unauthorized use. It appears, however, that the Patterson driveway has been used by Brookdale prior and subsequent to the adoption of the zoning ordinance as a means of ingress and egress for their trucks.
*197 The spirit of the Zoning Act is to restrict nonconforming uses, and while R.S. 40:55-48 permits them to continue as of right, nonconforming uses may not be enlarged as of right except where the enlargement is so negligible or inconsequential that it does not warrant judicial or administrative notice or interference. Grundlehner v. Dangler, 29 N.J. 256, 263 (1959). See Heagen v. Allendale, 42 N.J. Super. 472 (App. Div. 1956); Kramer v. Montclair, 33 N.J. Super. 16 (App. Div. 1954); Martin v. Cestone, 33 N.J. Super. 267 (App. Div. 1954); Adler v. Dept. of Parks and Public Property, Irvington Tp., 20 N.J. Super. 240 (App. Div. 1952); DeVito v. Pearsall, 115 N.J.L. 323 (Sup. Ct. 1935).
The court in Grundlehner, supra, said at page 264 of 29 N.J.:
"The restriction against the enlargement of a nonconforming use as of right applies to the physical structure as well as its use. See Rockleigh Borough, Bergen County v. Astral Industries, 29 N.J. Super. 154, 161 (App. Div. 1953). And where there is doubt as to whether the enlargement is substantial rather than insubstantial it is to be resolved against the enlargement."
R.S. 40:55-48 provides that:
"Any nonconforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot or in the building so occupied and any such structure may be restored or repaired in the event of partial destruction thereof."
The relevant portions of the Bloomfield zoning ordinance are as follows:

"Definitions
Certain words and phrases used in this ordinance are defined for the purposes hereof as follows:
(a) * * * [T]he word `used' includes the words `arranged, designed or intended to be used.'

* * * * * * * *

General Provisions
(a) Non-conforming Uses. If at the time of the enactment of this Ordinance any building or lot is being used, * * * such use * * * may be continued, provided however * * * that any such structure shall be restored or repaired only in the event of partial destruction thereof."
*198 While the municipality cannot limit by zoning ordinance the statutory right afforded the owner to continue a nonconforming use (United Advertising Corp. v. Borough of Raritan, 11 N.J. 144 (1952)), it may by zoning ordinance be more liberally disposed toward nonconforming uses than R.S. 40:55-48. Moore v. Bridgewater Tp., 69 N.J. Super. 1 (App. Div. 1961). It is urged that the Bloomfield ordinance includes any "intended" use as part of a nonconforming use, and that here the defendant's intent was to use the whole tract. In the case of the Ochsner tract, no such intent can be inferred since he neither owned nor used it prior to the adoption of the ordinance.
In Martin v. Cestone, 33 N.J. Super. 267 (App. Div. 1954), the court considered a nonconforming use in the same municipality and observed that since the ordinance was not before it, it would only apply the applicable statute. It stated at page 269:
"But it is an existing use occupying the land, that the statute protects; the statute does not deal in mere intentions."
However the court refers to Chayt v. Board of Zoning Appeals, 177 Md. 426, 9 A.2d 747 (Ct. App. 1939), for further consideration of the ordinance. The ordinance in Chayt is identical in that it provides that the word "used" includes the words "arranged, intended or designed to be used." In construing the meaning of this definition, the court in Chayt ruled out any contemplated use as within the ordinance and limited it to existent structures that may be so designed or arranged for the particular use. It further said that by including the words "arranged, intended or designed to be used" provision is made for allowing the suspension of an actual use and that "[I]t would be unlikely that a zoning ordinance would make provision for so unsubstantial a thing as a plan in mind. * * * The law would not be concerned to regulate a change of intention." Cf. DeVito v. Pearsall, supra.
*199 Mere intention to use the entire tract for business purposes does not give defendants any right to such use. This is apparent when the definition of the word "used" is read in conjunction with subsequent provisions in the ordinance. General provision (a) pertains to nonconforming uses and provides that a "structure shall be restored or repaired only in the event of partial destruction thereof." General provision (b) states:
"No lot hereafter may be used and no building or part thereof hereafter may be constructed, moved, extended, altered or used except in conformity with the provisions of this Ordinance."
Since defendants have not sustained the burden of establishing a prior nonconforming use of the second floor, the question is whether they may, at any time after the passage of the ordinance, extend their business to the "four corners" of the original barn. A nonconforming user does not have the right to expand his operations or facilities to the boundaries of the property existing at the time of the passage of the zoning ordinance. Martin v. Cestone, supra. In Heagen v. Allendale, 42 N.J. Super. 472 (App. Div. 1956), a residential building was used for restaurant purposes, a nonconforming use in the municipality. Prior to the passage of the zoning ordinance, a 20' x 30' section of the second floor was used for restaurant purposes. In addition there were living quarters consisting of a kitchen, two bedrooms and a bathroom. After the passage of the zoning ordinance a fire occurred on this floor. Thereafter certain partitions were removed to expand the dining facilities to the entire second floor. The court declared this to be an extension of a nonconforming use. In the case sub judice the subsequent business use of the original loft, after the adoption of the zoning ordinance, is likewise an unauthorized extension of a nonconforming use. As in Heagen, supra, at page 483, we are not considering a situation where the entire building is now used for a purpose for which it was *200 originally designed, even though it was partially used for that purpose at the time of the passage of the ordinance.
Obviously, all the exterior additions to the rear and sides of the original structure as hereinbefore related, including the second-story addition made without authority or permission, constitute an unlawful enlargement of a nonconforming use. The trailers and sheds adjoining the cinder block wall are structures (Moore v. Bridgewater Tp., supra) and as such constitute unlawful extensions of a nonconforming use.
Moore v. Bridgewater Tp., supra, and Lamb v. A.D. McKee, Inc., 10 N.J. Misc. 649, 160 A. 563 (Sup. Ct. 1932) relied upon by defendants, are clearly distinguishable. Those cases concerned the removal from the land of a natural resource or a diminishing asset, as distinguished from a structure placed upon the land or some use made by the owner upon his land.
Pursuant to the 1941 building permit Mr. Pieretti erected an L-shaped addition to the southwest (front) part of the bottling plant, thereby squaring it off. This was the only building permit issued, and admittedly he never received a variance permitting any enlargement of the nonconforming use. Defendants urge this addition was originally designed to park trucks and to carry on the same activity which was formerly conducted in the precise former open area and does not constitute an extension of a nonconforming use. Our decisional authority is to the contrary. The construction of a building to house an outdoor nonconforming use constitutes an enlargement of such use. Hay v. Bd. of Adjustment of Ft. Lee, 37 N.J. Super. 461, 466 (App. Div. 1955); Monmouth Lumber Co. v. Ocean Township, 9 N.J. 64, 78 (1952). The building inspector in 1941 was clearly unauthorized under the applicable statute and ordinance to issue that building permit.
Reliance upon a permit invalidly issued by a municipality does not create an estoppel. Where there is no semblance of compliance with or authorization in the ordinance, *201 the deficiency is deemed jurisdictional and reliance will not bar even a collateral attack after the expiration of the time limitation applicable to direct review. Auciello v. Stauffer, 58 N.J. Super. 522 (App. Div. 1959); Esso Standard Oil Co. v. North Bergen Tp., 50 N.J. Super. 90 (App. Div. 1958); Jantausch v. Verona, 41 N.J. Super. 89 (Law Div. 1956), affirmed 24 N.J. 326 (1957); Rockleigh Borough, Bergen County v. Astral Industries, 29 N.J. Super. 154 (App. Div. 1953); V.F. Zahodiakin Engineering Corp. v. Zoning Bd. of Adjustment of City of Summit, 8 N.J. 386 (1952); Adler v. Dept. of Parks and Public Property, Irvington Tp., 20 N.J. Super. 240 (App. Div. 1952). An estoppel may be invoked as indicated in the trial court's opinion in Jantausch by Judge (now Chief Justice) Weintraub where the building inspector in good faith and within the ambit of his authority makes an erroneous and debatable interpretation of the ordinance and the property owner in good faith relies thereon. But that is not the situation here presented. Assuming good faith, the doctrine of estoppel may not be invoked in the light of the clear language in the ordinance which permits a repair or restoration of a partially destroyed nonconforming structure, but not an addition. See Schultze v. Wilson, 54 N.J. Super. 309 (App. Div. 1959); Marini v. Wanaque, 37 N.J. Super. 32 (App. Div. 1955).
Defendants urge the defense of laches. The erection of the front addition was readily apparent to the neighbors. Other improvements were made progressively and piecemeal in a manner designed to avoid detection. One of the neighbors testified that on various occasions from 1942 to 1958 he complained to the councilmen with respect to the Brookdale operation and nothing was done to stop the expansion. Apparently the Fairway Association also made various complaints to the town council. Another former neighbor on the Fairway from 1941 to 1960 by deposition testified that he made complaints in 1943 to the building inspector and to a councilman respecting the building activities and that, *202 as a result, "The police would send someone to talk to the persons doing the building and they would stop work. When the police went away they started building again until they got to a point where the building was half completed. Finally, as a result of many other people calling, the building was stopped and lay uncompleted for some time"; and in being referred to an exhibit and being asked to describe the construction, he said: "A screen of soda water cases was put up and then boards were laid on top of them. The purpose of the cases was to hide any signs of construction from the people on the Fairway. A cement block wall was erected in back of the cases. Posts were put under the boards and they were raised above the cases. Roofing material was laid on the boards. The window frames were put in the wall as it was going up. Eventually the wall became visible and it was apparent that a building was being erected." Further, in referring to a meeting in 1943 or 1944 with the governing body he said, "We met with our attorney and the Mayor and Town Council. We were promised relief in that no further expansion would be permitted and that the wall which had been built without a permit would be torn down. However, nothing was torn down. In fact very slowly and under a cover of a screen of cases the building was being completed." He also testified that about 1948 the neighbors retained counsel to represent them in the municipal court proceedings.
In the 1950's it appears that neighbors made complaints to the governing body and met with Mr. Pieretti with respect to his operation. Mr. Pieretti was aware of the hostility of his neighbors to his beverage plant, yet persisted in expanding his uses despite the ruling in Pieretti v. Johnson, supra, that he may not enlarge his prior nonconforming use without express permission from the appropriate authority, and the court's observation that "it appears that an extension of the business of prosecutor would be a serious disadvantage to the residents of the immediate vicinity which is a strictly residential area."
*203 "The application of laches as a defense to a municipality's attempt to enforce its zoning ordinance does not, generally speaking, comport with salutary policy, * * * and the doctrine should not be permitted to frustrate the enforcement of a valid zoning regulation except in the clearest and most compelling circumstances. After all, the governing authorities represent all the people of the municipality and the zoning ordinance is presumably for the benefit of the community as a whole * * *." Universal Holding Co. v. North Bergen Tp., 55 N.J. Super. 103, 111 (1959).
Where there is a clear violation of a zoning ordinance, a neighboring taxpayer's action "to eliminate the unlawful use serves not only his private interests but those of the entire community as well and, under such circumstances the equitable doctrine of laches should be hesitatingly invoked." Garrou v. Teaneck Tryon Co., 11 N.J. 294, 307 (1953). See Thornton v. Ridgewood, 17 N.J. 499, 511 (1955).
Laches is an affirmative equitable defense. Its applicability is peculiarly dependent upon considerations of equity. Some of the plaintiffs in this proceeding recently acquired their properties. As to those property owners there is no laches. The laches, if any, of some of the plaintiffs would not impair the rights of those free of the defense. Auciello v. Stauffer, supra, 58 N.J. Super., at page 531. Proof of laches as to some of the plaintiffs could not bind other affected plaintiffs, and hence a finding of laches as to some would be of no practical significance. Jantausch v. Borough of Verona, 41 N.J. Super. 89, 95 (Law Div. 1956), affirmed 24 N.J. 326 (1957).
The bringing of a legal action is a burdensome undertaking. Plaintiffs are "hardly to be criticized for withholding it until there was no alternative." Garrou v. Teaneck Tryon Co., supra, 11 N.J., at page 307; see also Morris v. Haledon, 24 N.J. Super. 171, 178 (App. Div. 1952).
Defendants' contention that plaintiffs have no standing to obtain an equitable injunction against the violation of a zoning ordinance was rejected in Mayor & Council of *204 Alpine Borough v. Brewster, 7 N.J. 42, 52 (1951). It was there held that an individual may obtain an equitable restraint against violation of a zoning ordinance where he has sustained special damage over and above the public injury. See Garrou v. Teaneck Tryon Co., supra; Frizen v. Poppy, 17 N.J. Super. 390 (Ch. Div. 1952); Morris v. Haledon, supra. The plaintiffs are being discommoded as a result of the increased noise in the overall operation, the heavy truck traffic and the parking of vehicles in unauthorized areas. While their properties in recent years have greatly increased in value, they would have enjoyed a still greater increase but for the unauthorized nonconforming uses. Plaintiffs are entitled to vindicate and protect their special interests and the public interest as well. Garrou v. Teaneck Tryon Co., supra.
The plaintiffs are entitled to injunctive relief. Accordingly, defendants Joseph Pieretti, Jr. and Marie Pieretti, his wife, individually and trading as Brookdale Beverage Co., are enjoined from:
1. The use of the Ochsner tract for any purpose connected with the Brookdale operation.
2. The use of the entire second story of the present bottling plant for Brookdale purposes.
3. The use of an area on the first floor in said bottling plant and its extensions, beyond the area of 2280 square feet shown on the 1941 blueprint prepared by Mr. Pieretti as the existing Brookdale use prior to the front addition.
4. The use of any storage sheds or trailer bodies adjoining the cinder block wall and now on the Patterson, Herbstreith and Ochsner tracts.
The carbonation tank, as well as all storage sheds and trailer bodies adjoining the cinder block wall on the Herbstreith and Ochsner tracts, is to be removed.
Opportunity will be afforded Brookdale to make necessary arrangements if desired to relocate such part of their operation as may be required by virtue of this determination. Hence the injunctive relief herein granted plaintiffs will *205 not become effective until one year from the entry of judgment.
The plaintiffs seek to compel the municipal officials to enforce the zoning regulations against the defendant owners. It appears, however, the injunction above directed will provide plaintiffs with wholly adequate relief. In view thereof the mandatory relief sought against the defendant officials will be denied without costs to plaintiffs or defendant officials. Heagen v. Allendale, 42 N.J. Super. 472 (App. Div. 1956); Garrou v. Teaneck Tryon Co., 11 N.J. 294 (1953).
Plaintiffs further seek to abate a nuisance. The Brookdale operation is noisy, with peak noises in the summer when the business is at its height. During the summer there is heavy auto traffic occasioned by the retail customers who frequent the plant. The noise incidental to the bottling operation, the loading and unloading of the delivery trucks, the clanking of the bottles in the open areas, the loud conversation and occasional profanity by the employees discomfort and disturb the residents in the area, particularly the adjoining residents. In the summer, operations commence early every morning (except Sundays when the business is closed) and extend to 9:00 P.M. and sometimes later. The neighboring residents cannot enjoy the reasonable use of their porches and yards because of the incessant noises and truck traffic.
The essence of a private nuisance is an unreasonable interference with the use and enjoyment of land. The utility of the defendant's conduct is to be weighed against the quantum of harm to the plaintiff. Sans v. Ramsey Golf & Country Club, Inc., 29 N.J. 438 (1959). In Benton v. Kernan, 130 N.J. Eq. 193, 198 (E. & A. 1941), a leading authority on nuisances arising from noise, the court quoted approvingly from a Massachusetts case where it was held that "[N]oise becomes actionable only when it passes the limits of reasonable adjustment to the conditions of the locality and of the needs of the maker to the needs of the *206 listener. What those limits are cannot be fixed by any definite measure of quantity or quality. They depend upon the circumstances of the particular case." See Protokowicz v. Lesofski, 69 N.J. Super. 436 (Ch. Div. 1961); Lieberman v. Saddle River Twp., 37 N.J. Super. 62 (App. Div. 1955).
The fact that the bottling plant was in operation before Fairway was laid out as a street, and homes constructed thereon and on nearby Garrabrant Avenue, is an element to be considered in determining the reasonableness of the disturbance to such residents. Benton v. Kernan, supra; Abend v. Royal Laundry Service, Inc., 122 N.J. Eq. 77 (E. & A. 1937).
It may develop that when the unauthorized nonconforming use is discontinued within the one year allowed, the noise will diminish to the point where it is not unreasonable. However, in the interim, there is every reason to anticipate that as in past years, with the advent of summer, the noise will increase and will materially and injuriously affect the comfort and normal living habits of the neighboring plaintiffs. They will be deprived of the reasonable use of their premises unless the apprehended injury is enjoined. Said defendants will therefore be enjoined from the loading and unloading of cases on and off trucks and the stacking of cases in the open areas during the hours of 6:00 P.M. to 6:30 A.M. from June 1 to October 1 annually. This restraint is to terminate upon defendants' discontinuance of their unauthorized nonconforming use. Such termination is without prejudice to plaintiffs thereafter to seek a continuance of the restraint upon a showing of actual conditions warranting same.
A form of judgment consistent with the views herein expressed will be submitted, consented to as to form or to be settled on notice.